97 Teresa Baudet

1  BRANDON J. ANAND (SBN 262183)
   **ANAND LAW, PC**
2  5455 Wilshire Boulevard, Suite 1812
   Los Angeles, CA 90036
3  T: (323) 325-3389
   F: (323) 488-9659
4

7230
9001h

**FILED**
Superior Court of California
County of Los Angeles

AUG 2 6 2015

Sherri R. Carter, Executive Officer/Clerk

By _____ Deputy
        Shaunya Bolden

5  THADDEUS J. CULPEPPER (SBN 220194)
   **CULPEPPER LAW GROUPE**
6  710 S. Garfield Avenue
   Alhambra, CA 91801
7  T: (626) 786-2779
   F: (626) 380-1577
8

9  *Attorneys for Plaintiff JANE DOE*

10 **FSC:** 02/08/2017 **TRIAL:** 02/27/2017 **OSC:** 08/27/2018

      **SUPERIOR COURT OF CALIFORNIA**

11

12    **COUNTY OF LOS ANGELES—STANLEY MOSK COURTHOUSE**

13

14  JANE DOE (A Pseudonym);               **Case No.:**    BC 5 9 2 6 0 5

15          Plaintiff,

16      vs.                                **COMPLAINT FOR:**

17  DERRICK ROSE, an Individual;          1.  SEXUAL BATTERY IN VIOLATION
18  RANDALL HAMPTON, an                       OF CALIFORNIA CIVIL CODE §
    Individual; RYAN ALLEN, an                1708.5 (RAPE);
19  Individual; and DOES 1-10, inclusive; 2.  BATTERY;
                                           3.  TRESPASS;
20          Defendants.                    4.  CONSPIRACY TO TRESPASS,
                                               COMMIT RAPE, BATTERY;
21                                         5.  CIVIL ACTION FOR GENDER
                                               VIOLENCE IN VIOLATION OF
22                                             CALIFORNIA CIVIL CODE § 52.4;
                                           6.  INTENTIONAL INFLICTION OF
23                                             EMOTIONAL DISTRESS;
                                           7.  NEGLIGENT INFLICTION OF
24                                             EMOTIONAL DISTRESS
                                           8.  VIOLATION OF THE RALPH ACT
25                                         9.  CLAIM FOR DECLARATORY RELIEF
26
27                                         **DEMAND FOR JURY TRIAL**
28

RECEIPT #: CCH465980100
DATE PAID: 08/26/15   03:18 PM
PAYMENT: $435.00
RECEIVED:
CHANGE: "0
CHECK:
                  $435.00
                  $0.00
                  $0.00   510

CIT/CASE:
LEA/DEF#:          BC592605

_____
                    COMPLAINT
                        1

Plaintiff Jane Doe (a pseudonym) complains against Defendants DERRICK ROSE ("Rose"), an Individual; RANDALL HAMPTON ("Hampton"), an Individual; RYAN ALLEN ("Allen"), an Individual; and DOES 1-10 as follows. Defendants Rose, Hampton and Allen are collectively referred to as "Defendants".

## NATURE OF THE ACTION

1.      Plaintiff Jane Doe brings this lawsuit because she was gang raped by Defendants.  After approximately two years of dating, Rose asked Plaintiff to have sex with Rose and Hampton at the same time.  Plaintiff refused.  Approximately two months later, Defendants drugged Plaintiff at Defendant's residence, and, after Plaintiff's friend helped her get home safely in a cab, Defendants trespassed in to Plaintiff's apartment while Plaintiff was asleep and each sexually assaulted and raped her.

2.      As a direct consequence of these unlawful acts, Plaintiff has suffered severe physical injury, emotional distress including post-traumatic stress disorder, as well as economic, consequential, and other damages, all to her detriment.  Defendants' actions forced Plaintiff to hire attorneys and file suit and she, therefore, has incurred substantial attorneys' fees and costs.

## PARTIES

3.      Plaintiff Jane Doe (hereinafter "Jane Doe", "Plaintiff," or "Jane") is a pseudonym for a woman whose name is kept confidential for personal, safety and privacy reasons.   Plaintiff is a resident of the state of California and a citizen of the United States of America.

4.      Plaintiff is informed and believes that Defendant Derrick Rose is an individual and a resident of both Chicago, Illinois and Los Angeles, California in the County of Los Angeles.   Rose is a member of the National Basketball Association ("NBA").

5.      Plaintiff is informed and believes that Defendant Randall Hampton is an

individual and a resident of both Chicago, Illinois and Los Angeles, California in the County of Los Angeles.  Hampton has been Rose's best friend since sixth grade and is now his main assistant.

6.     Plaintiff is informed and believes that Defendant Ryan Allen is an individual and a resident of both Chicago, Illinois and Los Angeles, California in the County of Los Angeles.  Allen grew up with Rose and is now his assistant.

7.     Plaintiff is not aware of the true names and capacities of the Defendants sued as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  Each of these fictitiously named defendants is responsible in some manner for the activities alleged in this Complaint.  Plaintiff will amend this Complaint to add the true names of the fictitiously named defendants once they are discovered.

## VENUE

8.     Venue is proper in this Court because the injuries to Plaintiff occurred in the City and County of Los Angeles, California.

9.     Defendants committed acts causing harm to Plaintiff in the State of California.

## FACTUAL DISCUSSION

### A.     PLAINTIFF AND DEFENDANT ROSE MEET AND BEGIN DATING

10.     Plaintiff Jane met Defendant Rose in October 2011 at a party he hosted which she was invited to by mutual friends.  At the time, the NBA lock-out, which commenced in July 2011, was ongoing and Rose lived primarily in Los Angeles.  Rose approached Jane and they talked.  Jane was impressed that Rose seemed shy even as the host of the event.

11.     The two began communicating via text message and Rose invited Jane to dinner at his agent's house. The two began meeting regularly and formed an intimate relationship with one another.

12.     Jane was drawn to Rose because he was reserved, quiet, and shy, which made him seem "safe" for her to talk to. Rose and Plaintiff discovered they had many things in common: for example, they were both the 'babies' of their families, they both had protective parents who had hovered over them their whole lives, and they both did not enjoy the lime light.

13.     Jane met with Rose approximately 12 times in 2011. In 2012, the two met approximately 10 times (about once per month). In 2013, five times, the fifth meeting was on the night of the rape.

14.     Jane and Rose attended college basketball games, parties and other public events on a regular basis. Plaintiff considered the relationship genuine and truly cared for Defendant Rose. Rose invited Plaintiff to accompany him to major dinner events with Defendant Rose's agent and Plaintiff was present during the signing of Rose's Adidas contract.

15.     During the 2011-2012 basketball season, Defendant Rose was seriously injured. He spent the majority of his recovery time in Los Angeles. Plaintiff and Defendant Rose continue their romantic relationship and become sexually involved.

**B.**     **DEFENDANT ROSE BEGINS HIS ATTEMPTS TO INVOLVE OTHERS IN THE SEXUAL RELATIONSHIP**

16.     Rose and Jane would spend time with each other during the Holidays and each time before Jane would go to visit her family for holidays including Thanksgiving and Christmas. Rose also gave Plaintiff a laptop and asked her to "Skype" him.

17.     Rose started asking Jane to perform masturbatory acts while on Skype, which made her uncomfortable. Rose would get upset and berate her for refusing, so Jane stopped Skyping with him.

    a.   When Jane confided in her friends about her discomfort with his request, they told her that it was normal for couples to do that. Jane began to believe that there was something wrong with the prudish way she was raised. Jane was brought up in a traditional, religious

> household where a woman should have sex with only one person—her
> spouse.  She had not masturbated before and thought only guys did it,
> and could not imagine herself doing it.

18.  Rose begins obsessively asking Jane to involve others in their sex life, in particular, strippers and other couples.  Jane justified these requests because she thought that the sex they had was unsatisfactory and not exciting for Rose because she had hangups and was relatively less sexually expressive than most; she never had an orgasm before him or with him. She attributed their brief sexual encounters being un-exciting due to her shyness and to his hang-ups as well. Following their sexual encounters, Rose would make suggestions on the phone that seemed out of character with the way he was in person, such as having a stripper or another couple join them in a sexual encounter. Although this made Jane uncomfortable, she thought Rose was making these suggestions because of her own deficits and his, and that, grasping at straws, he was trying to spice up their sex life. Jane believed that her overall lack of sexual interest was the result of hormonal abnormalities following the surgical removal of her tubal pregnancy. She did not develop any theories about the sexual deficits of her partner and tended to excuse him much more readily than she excused herself.

## C.  **DEFENDANT ROSE ATTEMPTS TO HAVE SEXUAL ACTIVITY WITH JANE AND JANE'S FRIEND AT THE SAME TIME AND JANE REFUSES**

19.  In the later part of 2012, Defendant Rose began inviting Plaintiff to Chicago.  Plaintiff denied the requests at first and missed flights Rose had booked for her because she believed that Rose's requests were not genuine.  She was put off by his constant requests for her to masturbate on video and to involve other in their sex life. Jane also was put off because she had discovered that Rose had a girlfriend in Chicago while they were dating in Los Angeles and she had previously believed they were exclusive.

20. However, perhaps again feeling inadequate and abnormal, Jane finally gave in and took a trip to Chicago in May 2013. Jane brought along a friend whom she felt she could trust, A., who had been supportive of Jane during her tubal pregnancy. Jane's friend A. also happened to be a sex therapist. A. was to help Jane become more comfortable with sex and especially oral sex as Rose had requested but never received oral sex from Jane.

21. The trip took an unexpected turn for Jane, however. A. spoke to Jane and Rose about food, which was intended to make them both "feel more sexual and comfortable with their body fluids," as A. put it. Rose reacted with enthusiasm and chimed into the conversation, and he generally seemed to like A.. Jane started to feel uncomfortable, became very quiet, and could not decide if she regretted bringing A. along. All the while, A. proceeded to talk about foreplay and started touching herself and strip dancing in front of Jane and Rose. It had never been suggested by Jane that A. would be joining their sexual encounter, only that she would facilitate Jane becoming more comfortable with it. A. progressed from stripping to touching Rose's penis, and Jane was shocked and fearful of what was happening while A. continued her 'instruction.' A. encouraged Jane to take over stroking Rose, and then Rose in turn instructed Jane and A. to stroke each other. A. and Jane were both offended by the suggestion, and Jane indicated that she would "never touch another woman like that," while A. indicated that "it was a complete turn-off" for her.

22. A. subsequently left them and went to the restroom to get dressed, while Rose started giving Jane oral sex. Jane was stunned by what was happening, but did not stop him; she felt intimidated by A.'s actions and felt she could not perform up to what was expected of her. Jane assumed a passive role and accepted his ministrations without protest, but she did not "pass the test" of becoming aroused by him. After 20 minutes she noticed that Rose was more excited than ever, but she could not "get out of her head and into her body" and felt inadequate. Eventually, Rose tired from his efforts, got up and grabbed his backpack and left to the restroom to relieve himself. A. came

back out, all dressed again. When Rose returned from the restroom, he and A. began talking about his baby, and Jane was shocked because Rose had never mentioned his baby to her. Rose began showing pictures of his baby to A., and they discussed music he liked and people he looked up to—none of which Jane had ever heard him talk about before. Jane had only ever been alone with Rose and bodyguards or other men, and had never seen how he interacts with other women before. Jane began to seriously question her relationship with Rose because he seemed able to be more personal with A. than he had ever been with her. Once Rose left their hotel room, A. and Jane spoke and A. tried to help her accept what had happened between them. Jane remained doubtful of the relationship with Rose and contemplated leaving the next day to return to Los Angeles.

23.    The next evening, Rose invited Jane and A. to dinner at his house after the game he played in ended. At the dinner table, A. and Rose continued to chat animatedly and Jane felt like the odd person out. Rose gave them a tour of the house, but interacted mostly with A. so Jane strayed behind and did not follow them. When Jane caught up with them, she found Rose on his back with A. leaning over him, as if they had been caught in the act of kissing. Jane was disappointed in her friend A., but forgave her because she was grateful for A.'s help when she was recovering from surgery. Jane was upset with both and walked out, despite A. asking Jane to sit down and talk. Jane went back to pack in her hotel room and A. followed 20 minutes later. No conversation was had about what had transpired and they both packed and left the next morning back to Los Angeles. As a result of the experiences in Chicago, Jane questioned Rose's loyalty, decided she had been betrayed by Rose and A., and decided she would not pursue a romantic relationship with Rose anymore.

### D.    DEFENDANT ROSE ASKS JANE TO HAVE SEX WITH HIM AND DEFENDANT HAMPTON TOGETHER AND JANE REFUSES

24.    On June 27, 2013, Rose flew in to Los Angeles and texted Plaintiff Jane, saying he wanted to "see [her] asap". Jane had hopes that Rose might have changed.

1 | That was not the case. Rose then stated "Come over here and join me my guy Randall

2 | and his chick." Rose then clarified: "But I mean let's all do something...I need that".

3 |     25.    Plaintiff realized that Defendant Rose wanted her to have sex with him

4 | and his friend, Defendant Randall Hampton, at the same time. Plaintiff refused to do

5 | so.

6 |     26.    Defendant Rose attempted to persuade Jane stating "Man he just like my

7 | brother. That won't affect our relationship. I'm gon keep messing wit u cuz I fuck wit u.

8 | I can care less about the other shit." Plaintiff refused and told Rose: "u are clearly

9 | showing me our relationship is based on your sexual fantasies."

10 |     27.    However, Plaintiff still had feelings for Rose and naively assumed that he

11 | could resume a normal, one-on-one relationship. In retrospect, Plaintiff was naïve.

12 | Plaintiff Jane had discussions with her friend B. regarding Rose's desire to have sex

13 | with her and with Defendant Hampton and/or other couples at the same time with her.

14 | Plaintiff Jane's friend B. was in a relationship with one of Defendant Rose's close

15 | associates and was already aware of Defendant's Rose's sexual desires. At one point,

16 | Plaintiff's friend B. actually texted her stating "To be all the way 100 He be on that

17 | Derrick tip sometimes, smh he would probably be tryna have a threesome with you if

18 | you stayed with us and I know you are not about that life so I don't even want to put

19 | you in that situation lol you know I always try to protect mi bebe [Jane]". Plaintiff's

20 | friend B. also related a story where Defendant Rose and Defendant Hampton tried to

21 | simultaneously have sex with another woman who was incapacitated and did not desire

22 | to do so, but was able to escape.

23 |     28.    Despite such telling signs, Plaintiff and Rose continued to text one

24 | another, although far less than before. Plaintiff told Rose that she missed him.

25 |     29.    On July 23, 2013, Rose, uninterested in Plaintiff because she would not

26 | have sex with his friend or other couples, purported to break off their romantic

27 | relationship, stating "We good but I'm not messing wit u like that anymore."

28 | //

### E. DEFENDANTS DRUG PLAINTIFF, TRESPASS IN TO HER RESIDENCE AND RAPE HER

30. On August 26, 2013, Rose invited Jane to a home in Beverly Hills where he was residing. Rose asked Plaintiff to bring a friend with her. Defendants Rose, Hampton, and Allen discussed and planned a scheme to drug Plaintiff Jane and each have sex with her.

31. Defendant Allen met Plaintiff and her friend C. at the front door. Defendants offered Plaintiff and C. tequila and they all began drinking. Upon information and belief, Defendants also placed an unknown drug in a drink given to Plaintiff, without Plaintiff's consent, specifically for the purpose of carrying out their scheme to each have sex with Plaintiff while she was drugged and unable to resist.

32. Jane sat by a fire pit at the house and began picking up burning gemstones from a fireplace and tossing them. Her friend C. was upset and told her she was burning her hands, but Plaintiff, now drugged, did not notice.

33. Plaintiff's friend C. was not drugged or inebriated, however, and she kept a close watch on Jane. At one point, Defendant Allen exclaimed to C. "fuck talking, take your clothes off". C. refused and, at this point, Defendant Allen became angry and agitated, and began yelling "What are you in here for then" and "Well get the fuck out".

34. Defendants ordered a cab for C. and Defendant Allen continued to yell and repeatedly insult C. while also pushing her towards the front door. Defendants planned and hoped to kick C. out so that the drugged and incapacitated Plaintiff was alone for them to have their way.

35. Near the front door, Allen stood there waiting for C. to leave but C. stated that there was no way she would leave without Jane. C. knew that Plaintiff was incapacitated and was not safe left alone.

36. Finally, C. managed to get Plaintiff in the cab waiting outside, all while Defendant Allen continued to yell profanities.

37.    The cab driver dropped C. off first as her residence was closer to the Beverly Hills residence than Plaintiff's residence which was near downtown Los Angeles, approximately 35 minutes away.   Plaintiff was now extremely incapacitated and the cab driver helped her walk to the front door.

38.    Once inside, Jane was in and out of consciousness.   She threw up in the bathroom and could barely make it to her bed, lying down with her clothes and shoes still on.

39.    Now the morning of August 27, 2013, Defendants drove from Beverly Hills to Plaintiff's residence, knowing that she was drugged and incapacitated.   Upon information and belief, Defendants checked the front doors to Plaintiff's apartment complex and found one that was unlocked, as it often was left unlocked or "propped" open by various tenants.   Defendants then proceeded to Jane's apartment, which was also routinely left unlocked.

40.    Jane has very little recollection of the events that followed given her incapacitated state of consciousness, with a recollection of only few second flashes at a time.   However, Jane does recall brutal details of the rape.   She recalls a flash with all three Defendants in her bedroom.   She remembers stating "Why are you guys in here, where's my roommate?".

41.    She recalls Defendant Rose walking towards her bed, lifting her dress and penetrating her.   She recalls feeling extremely sick and very dizzy and attempting to roll over as she was gagging and nauseous.

42.    In another flash of memory, Jane remembers Rose laying by her side on the bed close to her face while the other two guys were having sex with her simultaneously.

43.    In another flash, she remembers Hampton pinning her arms down on either side of her head while she was on her back and feeling as if she could not breathe because of his weight on top of her.   She recalls attempting to sit up and Defendant

1  Hampton rushing out of the room.  She also recalls Defendant Allen running in to grab
2  his tennis shoes and running out.

3      44.    In the early hours of August 29, 2013, Jane's roommate, D., had returned
4  to the apartment after going out and was inebriated.  D. noticed that there was a man in
5  the living room, but did not recognize him and did not realize what was going on.  D.
6  walked to her room and while unlocking the door, she was approached by one of the
7  men who tried to force their way into her room.  She pointed to the bathroom and said
8  "the bathroom's over there," but the man appeared intent on coming in, presumably to
9  rape her as well.  D. was able to slam the door shut.  She then turned her fan on as she
10  usually does and went to sleep.

11      45.    When Jane woke up the next day, she was on top of the bed, her dress was
12  up around her neck, and there was lubricant all over her body.  There were also what
13  appeared like used condoms strewn around her room and bed.  Jane also had painful
14  burns on her hands from the burning gemstones.

15      46.    Jane also felt a "rug-burn" sensation of pain in between her legs, all
16  around her legs, and internal pain inside her vagina.  Jane was dehydrated but could
17  not hold water down and would immediately throw up when she drank.  She was dizzy,
18  hung-over, and very uncomfortable.  She wondered why her clothes were on but was in
19  a rush to get to work and she went to the shower immediately to clean herself up.

20      47.    Even seeing condoms around the bed, Jane did not know exactly what
21  had happened.  She could not tell for sure if she was penetrated anally, she did not
22  know if the men had ejaculated inside her vagina, and she did not do any pregnancy
23  tests or a rape kit because she was terribly ashamed and embarrassed.  She kept
24  thinking that this was "not supposed to happen."

25      48.    Jane woke up late on August 29, 2013 because the drug she was given
26  knocked her out and made her oversleep.  This was unusual for her because she never
27  overslept her alarm, even when she had been out drinking alcohol the night before.

28

49.     After cleaning herself up, Jane arrived late to work. Her coworker, E., commented that she looked awful and that Jane should not have even come to work that day.  In response, Jane told E. what happened to her and E. responded in shock and horror.  E. advised Jane to get legal representation and call the police, while citing another case of rape with another NBA player and a young woman she knew.

50.     Against her co-worker's advice however, Jane ended up staying at work but could not get much work done. She also refused to get legal representation or call the police because she was ashamed and embarrassed by what had happened to her. She was concerned her conservative family would find out.  She felt lost, scared and did not know who to turn to.  Most of all, she was terrified that the men who raped her will come back to her place and rape her again, or hurt her in other ways.

51.     Approximately one month after the rapes, one of the three men who raped Jane (Allen) contacted her by phone. She received a call from him while she was at church with her friend F..  Jane put the phone on speakerphone so that her F. could overhear the entire conversation.  Allen stated that he "was not aware that Jane was drugged that night," and indicated "he thought she had wanted it."  Allen further stated that "this is what they do all the time, especially when they are in LA; the girls in LA ask them to have group sex with them because they recognize them as NBA players."

52.     After overhearing this phone conversation, F. contacted an attorney on behalf of Jane and encouraged Jane to pursue legal action against the men who raped her.

53.     After the rape, Jane became understandably paranoid, and was afraid that Rose and his friends were monitoring her cell phone, so she wanted to use a different phone for her personal calls.  During the time of the rape and right afterwards, Jane worked as an accountant/administrator of a property management company. Some time later, however, she was fired because she kept using her company phone for personal calls (mainly to her attorney and to coordinate therapy sessions) against company policy.

54.   Due to Defendant Rose and Defendants Hampton and Allen's action, Plaintiff suffered severe emotional distress.  The crime of rape serves as an oppressor, most often to women, of their bodies, their psyche and their social significance. Victims who are raped by acquaintances often suffer from additional stressors, as Jane did, including a significant sense of betrayal and a higher level of self-blame than victims who are raped by strangers.  Victims are occasionally ridiculed and sometimes even worse.   They are often discouraged from cooperating with law enforcement authorities because of the attacker's perceived status in the community.  Jane feared such retaliation and was reluctant to report the rape because of her relationship with Rose.  She also, perhaps innocently, felt that he was guided by his desire to impress his friends and did not wish jail time for him.

55.   Jane eventually she lost her job because her productivity was seriously affected by the rapes and she was unable to perform as she did before. Thus, indirectly, the unintended and very unfortunate consequence of her traumatic rape resulted also in the loss of her employment and the primary source of her income.

## FIRST CAUSE OF ACTION

### *SEXUAL BATTERY IN VIOLATION OF CALIFORNIA CIVIL CODE § 1708.5 (RAPE);*

### [By Plaintiff Against All Defendants]

56.   Plaintiff Jane Doe re-alleges and incorporates by reference as though fully set forth herein, each and every allegation set forth above in this Complaint.  As a first separate and distinct claim for relief, Plaintiff Jane Doe complains against Defendants as follows:

57.   California Civil Code 91708.5 provides as follows:

(a) A person commits a sexual battery who does any of the following:

(1) Acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results.

(2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results.

(3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results

(b) A person who commits a sexual battery upon another is liable to that person for damages, including, but not limited to, general damages, special damages, and punitive damages.

(c) The court in an action pursuant to this section may award equitable relief, including, but not limited to, an injunction, costs, and any other relief the court deems proper.

(d) For the purposes of this section "intimate part" means the sexual organ, anus, groin, or buttocks of any person, or the breast of a female.

(e) The rights and remedies provided in this section are in addition to any other rights and remedies provided by law.

(f) For purposes of this section "offensive contact" means contact that offends a reasonable sense of personal dignity.

58.    Plaintiff Jane Doe alleges that Defendants, and each of them, committed the act of civil sexual battery in violation of California Civil Code § 1708.5, when, on August 27, 2013, Defendants, and each of them, willfully, maliciously, intentionally and without the consent of Plaintiff Jane Doe subjected her to forceful, harmful and/or offensive touching of Plaintiff Jane Doe's breasts, buttocks and vagina, including viciously raping Plaintiff by way of vaginal penetration while Plaintiff was incapacitated and unconscious, against her will, without her consent, and in spite of her express objection.

59.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Jane Doe has suffered physical injury, severe emotional distress, humiliation,

1   embarrassment, mental and emotional distress and anxiety, all in an amount according

2   to proof at trial.

3   60.   As a direct and proximate result of Defendants' unlawful conduct,

4   Plaintiff Jane Doe has suffered economic harm and other consequential damages all in

5   an amount according to proof at trial.

6   61.   The acts of Defendants, and each of them, as alleged herein were willful,

7   wanton, and malicious and were intended to oppress and cause injury to Plaintiff Jane

8   Doe. In light of the willful, wanton, malicious and intentional conduct engaged in by

9   Defendants, and each of them, Plaintiff Jane Doe is entitled to an award of punitive

10   damages.

11   62.   Plaintiff Jane Doe also seeks declaratory relief as set forth below.

12   WHEREFORE, Plaintiff prays for relief as set forth herein.

## SECOND CAUSE OF ACTION

### *BATTERY*

### [By Plaintiff Against All Defendants]

16   63.   Plaintiff Jane Doe re-alleges and incorporates by reference as though fully

17   set forth herein, each and every allegation set forth above in this Complaint.  As a

18   second separate and distinct claim for relief, Plaintiff Jane Doe complains against

19   Defendants as follows:

20   64.   On August 27, 2013, Defendants, and each of them, intentionally and

21   unlawfully engaged in harmful and/or offensive contact with Plaintiff's person as

22   alleged more fully above.

23   65.   By engaging in the conduct herein above alleged, Defendants, and each of

24   them, intended to cause physical harm or offensive touching to Plaintiff.

25   66.   As a result of Defendants' acts as herein above alleged, Plaintiff was

26   physically harmed and/or experienced offensive contact with her person.

27   67.   At no time did Plaintiff consent to any of the acts of Defendants herein

28   above alleged.

68.     Plaintiff suffered severe emotional distress as a legal result of the conduct by Defendants of which Plaintiff complains.   Plaintiff Jane Doe suffered mental distress, indignity, great humiliation, emotional distress manifesting in physical symptoms, embarrassment, anger, disappointment, fear, stress and worry, all of which is substantial and enduring.

69.     Defendants' action have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to her damages in an amount according to proof.

70.     Plaintiff was in a vulnerable position due to Defendants actions in drugging her.   Notwithstanding such knowledge, Defendants, and each of them, acted oppressively, maliciously, in willful and conscious disregard of Plaintiff's rights, and with the intention of causing or in reckless disregard of the probability of causing injury and emotional distress to Plaintiff Jane Doe.

71.     The foregoing conduct of Defendants, and each of them, was intentional, willful and malicious and Plaintiff is entitled to punitive damages in an amount to conform to proof.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, humiliation, embarrassment, mental and emotional distress and anxiety, all in an amount according to proof at trial.

72.     The acts of Defendants, and each of them, as alleged herein, were willful, wanton, and malicious and were intended to oppress and cause injury to Plaintiff. In light of the willful, wanton, malicious and intentional conduct engaged in by Defendants, Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

//

//

//

### THIRD CAUSE OF ACTION

### *TRESPASS*

### [By Plaintiff Against All Defendants]

73.　Plaintiff Jane Doe re-alleges and incorporates by reference as though fully set forth herein, each and every allegation set forth above in this Complaint.  As a third separate and distinct claim for relief, Plaintiff Jane Doe complains against Defendants as follows:

74.　Defendants, and each of them, intentionally, and with malicious intent, entered the property Jane leased without Jane's permission.

75.　Jane was severely harmed by the actions of Defendants in intentionally entering her property without her permission and the conduct of Defendants, and each of them, was a substantial factor in causing Plaintiff's harm.

WHEREFORE, Plaintiff prays for relief as set forth herein.

### FOURTH CAUSE OF ACTION

### *CONSPIRACY TO TRESPASS, COMMIT RAPE, BATTERY AND ASSAULT*

### [By Plaintiff Against All Defendants]

76.　Plaintiff Jane Doe re-alleges and incorporates by reference as though fully set forth herein, each and every allegation set forth above in this Complaint.  As a fourth separate and distinct claim for relief, Plaintiff Jane Doe complains against Defendants as follows:

77.　Conspiracy is a legal doctrine that imposes liability upon person even when they have not committed a tort, when those persons share a common plan or design in perpetration of a tort.

78.　Defendants, and each of them, were each aware and planned to drug Plaintiff, as more fully alleged herein.

79.　Defendants, and each of them, were further aware and planned to trespass on to Plaintiff's residence.

80. Defendants, and each of them, were further aware and planned to rape Plaintiff.

81. Defendants, and each of them, agreed with each other and intended that the trespass, battery, and rape be committed.

82. Finally, Defendant carried out and effectuated their plan to drug Plaintiff, trespass on to Plaintiff's property and rape Plaintiff.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## FIFTH CAUSE OF ACTION

### *CIVIL ACTION FOR GENDER VIOLENCE IN VIOLATION OF CALIFORNIA CIVIL CODE § 52.4*

### [By Plaintiff Against All Defendants]

83. Plaintiff Jane Doe re-alleges and incorporates by reference as though fully set forth herein, each and every allegation set forth above in this Complaint. As a fifth separate and distinct claim for relief, Plaintiff Jane Doe complains against Defendants as follows:

84. California Civil Code Section 52.4 provides:

(a) Any person who has been subjected to gender violence may bring a civil action for damages against any responsible party. The plaintiff may seek actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. A prevailing plaintiff may also be awarded attorney's fees and costs.

(b) An action brought pursuant to this section shall be commenced within three years of the act, or if the victim was a minor when the act occurred, within eight years after the date the plaintiff attains the age of majority or within three years after the date the plaintiff discovers or reasonably should have discovered the psychological injury or illness occurring after the age of majority that was caused by the act, whichever date occurs later.

(c)  For  purposes  of  this  section,  "gender  violence,"  is  a  form  of  sex discrimination and means any of the following:

(1) One or more acts that would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

(2) A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

(d) Notwithstanding any other laws that may establish the liability of an employer for the acts of an employee, this section does not establish any civil liability of a person because of her or her status as an employer, unless the employer personally committed an act of gender violence.

85.    Plaintiff Jane Doe alleges that on August 27, 2013, Defendants, and each of them, violated California Civil Code Section 52.4 in that one or more acts inflicted on Plaintiff constitutes a criminal offense under state law that has as an element of use, attempted use, or threatened use of physical force against her person, committed at least in part based on the gender of Plaintiff, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

86.    Plaintiff Jane Doe alleges that Defendants, and each of them, violated California Civil Code Section 52.4 in that they each engaged in a physical intrusion or physical invasion of a sexual nature under coercive conditions, even if those acts have not yet resulted in criminal complaints, charges, prosecution, or conviction.

87.    As direct and proximate result of Defendants' violations of California Civil Code Section 52.4, Plaintiff Jane Doe suffered severe emotional distress, post-traumatic stress disorder, humiliation, embarrassment, mental and emotional distress and anxiety, all in an amount according to proof at trial.

88.     As direct and proximate result of Defendants' violations of <u>California Civil Code Section 52.4</u>, Plaintiff Jane Doe suffered economic harm and other consequential damages all in an amount according to proof at trial.

89.     The acts of Defendants, as alleged herein were willful, wanton, and malicious and were intended to oppress and cause injury to Plaintiff Jane Doe.  In light of the willful, wanton, malicious and intentional conduct engaged in by Defendants, Plaintiff Jane Doe is entitled to an award of punitive damages.

90.     Plaintiff Jane Doe also seeks declaratory and injunctive relief as set forth below.

91.     Plaintiff has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore demand such reasonable attorneys' fees and costs as set by the court.

WHEREFORE, Plaintiff prays for relief as set forth herein.

**<u>SIXTH CAUSE OF ACTION</u>**

**_<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>_**

**[By Plaintiff Against All Defendants]**

92.     Plaintiff Jane Doe re-alleges and incorporates by reference as though fully set forth herein, each and every allegation set forth above in this Complaint.  As a sixth separate and distinct claim for relief, Plaintiff Jane Doe complains against Defendants as follows:

93.     This is an action for damages pursuant to the common law of the State of California as mandated by the California Supreme Court in the decision of <u>Rojo v. Kliger (1990) 52 Cal. 3d 65</u>.

94.     Defendants engaged in the extreme and outrageous conduct herein above alleged with wanton and reckless disregard of the probability of causing Plaintiff to suffer severe emotional distress.

95.     As a proximate result of the extreme and outrageous conduct engaged in by Defendants, Plaintiff suffered severe emotional distress, humiliation, mental

anguish and extreme emotional and physical distress all to her general damage in an amount according to proof at trial.

96. As a proximate result of the wrongful actions of defendants, and each of them, Plaintiff has suffered harm, including but not limited to, lost earnings and other employment benefits, loss of future employment benefits, including insurance and pension, humiliation, all in an amount to be proven at trial but exceeding the minimum jurisdictional limits of this court.

97. Defendants' conduct as herein alleged was malicious and oppressive in that it was conduct carried on by Defendants in a willful and conscious disregard of Plaintiff's rights and subjected her to cruel and unjust hardship. Plaintiff is therefore entitled to an award of punitive damages against Defendants.

98. As a direct, foreseeable and legal result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer substantial losses in earnings, bonuses and other employment benefits, in addition to expenses incurred in obtaining alternative employment, and has suffered and continue to suffer humiliation, embarrassment, severe mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as set forth herein.

### SEVENTH CAUSE OF ACTION

### *NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS*

### [By Plaintiff Against All Defendants]

99. Plaintiff Jane Doe re-alleges and incorporates by reference as though fully set forth herein, each and every allegation set forth above in this Complaint. As a seventh separate and distinct claim for relief, Plaintiff Jane Doe complains against Defendants as follows:

100. Defendants owed Plaintiff a duty of care not to cause her emotional distress.

101.   Defendants breached this duty of care by way of their own conduct as alleged herein.

102.   Defendants' conduct on the night of August 27, 2013, specifically the trespass and subsequent brutal rape, has caused Plaintiff emotional distress.

103.   As a proximate result of Defendants' extreme and outrageous acts, Plaintiff has suffered emotional distress, humiliation and embarrassment.

104.   Defendants' conduct has caused and continues to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, medical expenses, future earnings and benefits, costs of suit, embarrassment and anguish, all to her damage in an amount according to proof.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## EIGHTH CAUSE OF ACTION

### *VIOLATION OF THE RALPH ACT—CALIFORNIA CIVIL CODE § 51.7*

### [By Plaintiff Against All Defendants]

105.   Plaintiff Jane Doe re-alleges and incorporates by reference as though fully set forth herein, each and every allegation set forth above in this Complaint.  As a eighth separate and distinct claim for relief, Plaintiff Jane Doe complains against Defendants as follows:

106.   Civil Code section 51.5, the Ralph Act, provides that persons have the right to be free from violence or threat of violence, committed against their persons or property due to, among other things, their gender.

107.   On or August 27, 2013, Defendants, and each of them, trespassed on to Jane's property and brutally raped her.

108.   Plaintiff's sex was the reason for Defendant's unwanted physical contact and ultimate sexual assault.

109.   Plaintiff is informed and believed and thereon alleges that the aforementioned conduct of defendants, and each of them, denied, aided, or incited in a denial of, discriminated or made a distinction that denied Plaintiff full and equal

advantages, privileges, and services to Plaintiff, based solely upon plaintiffs refusal to submit to sexual advances and her objections to the physical assault that was inflicted upon her, and therefore constituted a violation of the Ralph Act.

110. As a proximate result of the wrongful actions of defendants, and each of them, Plaintiff has suffered harm, including but not limited to physical injury, fear, anxiety, sever emotional distress, humiliation, embarrassment, mental anguish, and physical harm, all in an amount to be proven at trial but exceeding the minimum jurisdictional limits of this court.

111. As a proximate result of the wrongful actions of defendants, and each of them, Plaintiff has suffered harm, including but not limited to, lost earnings and other employment benefits, loss of future employment benefits, all in an amount to be proven at trial but exceeding the minimum jurisdictional limits of this court.

112. Plaintiff is further informed and believes, and based thereon alleges, that defendants, and each of them, acted and continue to act, with full knowledge of the consequences and damage being caused to plaintiff, by defendants' actions, and defendants' actions were, and are, willful, oppressive, and malicious. Accordingly, plaintiff is entitled to punitive damages against defendants, and each of them, in a sum according to proof at trial.

113. Plaintiff Jane Doe also seeks declaratory relief as set forth below.

114. Plaintiff has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore demand such reasonable attorneys' fees and costs as set by the court.

WHEREFORE, Plaintiff prays for relief as set forth herein.

### NINTH CAUSE OF ACTION

### *CLAIM FOR DECLARATORY RELIEF*

### [By Plaintiff Against All Defendants]

115. Plaintiff Jane Doe re-alleges and incorporates by reference as though fully set forth herein, each and every allegation set forth above in this Complaint. As a ninth

separate and distinct claim for relief, Plaintiff Jane Doe complains against Defendants as follows:

116.   For all the reasons set forth above, Plaintiff seeks a declaration from the Court that Defendants Rose, Hampton, and Allen's behavior is that of sexual predators and that their words and conduct violates the civil rights of women under the various Acts alleged above.

WHEREFORE, Plaintiff prays for relief as set forth herein.

### **PRAYER FOR RELIEF**

Wherefore, Plaintiff Jane Doe prays for judgment against Defendants, and each of them, as follows:

1. For a money judgment representing compensatory damages including consequential damages, lost wages, earnings, and all other sums of money, together with interest on these amounts, according to proof;

2. For an award of money judgment for mental pain and anguish and severe emotional distress, according to proof;

3. Punitive damages, according to proof;

4. For attorney's fees and costs;

5. For an additional statutory civil penalty in the sum of $25,000, pursuant to Civ. Code § 52(b);

6. For an additional statutory relief as plead herein including penalties under Civil Code §§52.5 and 52.5;

7. For prejudgment and post-judgment interest;

8. For declaratory and injunctive relief; and

9.  For any other relief that is just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff Jane Doe demands trial of all issues by jury.

Dated: August 26, 2015                     **ANAND LAW, PC**

By: _____

BRANDON J. ANAND
*Attorneys for Plaintiff*

COMPLAINT
25

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Brandon J. Anand, Esq., SBN 262183<br>ANAND LAW, PC<br>5455 Wilshire Blvd., Suite 1812<br>Los Angeles, CA 90036<br>TELEPHONE NO.: (323) 325-3389  FAX NO.: (323) 488-9659<br>ATTORNEY FOR *(Name):* JANE DOE (A Pseudonym) | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>AUG 26 2015<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By _____ Deputy<br>Shaunya Bolden |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Doe v. Rose, Et Al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER **BC 5 9 2 6 0 5** |
|---|---|---|
| ☑ **Unlimited** ☐ **Limited**<br>(Amount  (Amount<br>demanded  demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ **Counter** ☐ **Joinder**<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☑ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* 9
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date: 8/26/2015
Brandon J. Anand, Esq.
_____  ► _____
(TYPE OR PRINT NAME)  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
* Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
* File this cover sheet in addition to any cover sheet required by local court rule.
* If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
* Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: Doe v. Rose | CASE NUMBER: BC 5 9 2 6 0 5 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 4 ___ ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☑ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., ④<br>1., 3.<br>1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

| SHORT TITLE: Doe v. Rose | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Doe v. Rose | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐  A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐  A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐  A6151  Writ - Administrative Mandamus<br>☐  A6152  Writ - Mandamus on Limited Court Case Matter<br>☐  A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐  A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐  A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐  A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐  A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐  A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐  A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐  A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐  A6141  Sister State Judgment<br>☐  A6160  Abstract of Judgment<br>☐  A6107  Confession of Judgment (non-domestic relations)<br>☐  A6140  Administrative Agency Award (not unpaid taxes)<br>☐  A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐  A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐  A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐  A6030  Declaratory Relief Only<br>☐  A6040  Injunctive Relief Only (not domestic/harassment)<br>☐  A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐  A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐  A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐  A6121  Civil Harassment<br>☐  A6123  Workplace Harassment<br>☐  A6124  Elder/Dependent Adult Abuse Case<br>☐  A6190  Election Contest<br>☐  A6110  Petition for Change of Name<br>☐  A6170  Petition for Relief from Late Claim Law<br>☐  A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: Doe v. Rose | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☐2. ☐3. ☑4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 111 North Hill Street |
|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 8/26/2015

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**