BRANDON J. ANAND (SBN 262183)
**ANAND LAW, PC**
5455 Wilshire Boulevard, Suite 1812
Los Angeles, CA 90036
T: (323) 325-3389
F: (323) 488-9659
brandon@anandlaw.com

*Attorneys for Plaintiff*
JANE DOE, a pseudonym

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JANE DOE (A Pseudonym);<br><br>Plaintiff,<br><br>vs.<br><br>DERRICK ROSE, an Individual; RANDALL HAMPTON, an Individual; RYAN ALLEN, an Individual; and DOES 1-10, inclusive;<br><br>Defendants. | **Case No.: CV 15-7503-MWF(JCx)**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES TO STRIKE DEFENDANT DERRICK ROSE'S MOTION FOR SUMMARY JUDGEMENT OR IN THE ALTERNATIVE IN OPPOSITION TO DEFENDANT ROSE'S MOTION FOR SUMMARY JUDGMENT**<br><br>**<u>Hearing:</u>**<br>Date:   July 18, 2016<br>Time:   10:00 a.m.<br>Place:  Courtroom 1600<br>Judge:  Hon. Michael W. Fitzgerald |

## **PRELIMINARY STATEMENT**

This case centers on the gang rape of Plaintiff while she was intoxicated and passed out in her apartment the morning of August 27, 2013. Predictably, Defendants claim that Plaintiff Doe knowingly consented to sex with three men, one of whom—Defendant Rose—she had been in an intimate relationship with for approximately two years prior to the rape (the other two whom she had never prior to earlier that night).

Defendant Rose has not been granted leave by this Court to file his motion for summary judgment under seal. As such, Plaintiff Doe respectfully requests that this Court strike Defendant Rose's motion for summary judgment in its entirety.

Even if the Court permits Defendant Rose's motion to proceed despite having been granted leave, there are a number of material facts in dispute in the case that warrant denial of the motion. Among others, the parties dispute whether Plaintiff Doe was intoxicated; whether the Defendants attempted to keep the intoxicated Plaintiff at their home and remove the Plaintiff's sober friend; whether the Defendants had sex with the Plaintiff at Rose's rented Beverly Hills house (the "Residence"); whether Plaintiff Doe invited any or all of the Defendants to her home after she had already left them at the Residence; whether Plaintiff Doe was alert and conscious when Defendants arrived at her apartment, whether she let Defendants in, or if instead they trespassed, and most importantly; whether Plaintiff Doe in fact consented to having sex with all three of the men.

The record shows that Plaintiff Doe flatly rejected at least two previous requests by Defendant Rose to engage in group sex. The record also shows that Plaintiff Doe's friend, who was with her during the evening prior to the rape, did not think that she should leave Plaintiff Doe at the Residence and instead they left together in a cab. Moreover, Defendants' own expert concluded that Plaintiff Doe was heavily intoxicated and reported that Plaintiff Doe's Blood Alcohol Content

1  (BAC) was approximately two and a half times the legal limit. Defendants' motion
2  for summary judgment should be rejected on this basis alone.
3       As is shown below and in Plaintiff's Separate Statement of Genuine Disputed
4  and Undisputed Material Facts and Supporting Evidence, there are very obviously
5  dozens of disputed, material facts that directly relate to the actionable conduct
6  alleged in Plaintiff's complaint. As a result, Defendant's Motion for Summary
7  Judgment must be denied.

## STATEMENT OF FACTS

10       Sometime in 2011, Plaintiff Doe and Defendant Rose began dating. They met
11  at a party hosted by Defendant Rose to which Plaintiff Doe was invited by mutual
12  friends. During the next year, the two met approximately once a month (about ten
13  times). In 2013 they met approximately five times, including the last time, which
14  was the night of the rape.
15       Defendant Rose began attempting to involve others in the parties' intimate
16  relations. In early 2012 Defendant Rose asked Plaintiff Doe if she knew any
17  strippers and whether she would invite one to join them in their intimate relations.
18  Deposition of Plaintiff Doe, Jan. 21, 2106. (Doe Decl., Exh. A, January 21, 2016
19  Deposition of Plaintiff Doe at 77:25-78:9). Shocked, Plaintiff Doe refused,
20  explaining that she would never do that. *Id.* In May or June of 2013, he invited
21  Plaintiff Doe to the hotel where he was staying and requested that she engage in
22  sexual relations with his friend and his friend's girlfriend. (*Id.* at 78:1-25, 79:1-25,
23  80:1-6, 82:12-25, 83:1-11,84:1-25; Doe Decl., Exh. B, June 14, 2016 Deposition of
24  Plaintiff Doe at 140:4-142:4, 150:8-151:8, 154:9-16; 158:24-159:6; Doe Decl., Exh.
25  C, Doe_Production_Set_One_115-119; Anand Decl., Exh. D, June 17, 2016
26  Deposition of Defendant Rose at 16:19-23). Again, as admitted by Defendant Rose,

*Plaintiff's Memorandum of Points and
Authorities in Opposition to Defendant*               *Doe v. Rose*
*Rose's Motion for Summary Judgment*    3   *Case No. CV 15-7503-MWF(JCx)*

Plaintiff Doe refused, and turned around and went home instead of meeting Defendant Rose at his hotel. *Id.*

On August 26, 2013, Defendant Rose invited Plaintiff Doe and her friend, Jessica "Kendra" Groff to a house he was renting in Beverly Hills (the "Residence"). Plaintiff Doe drank vodka while waiting for the car that Defendant Rose had arranged for her and Ms. Groff. Pl. Tr. at 150-54. During the car ride, she drank red wine provided by the car service. *Id.*

Upon arriving at the Residence, Plaintiff Doe and Ms. Groff were met by Defendant Allen. Deposition of Ryan Allen, May 12, 2016.  (Anand Decl., Exh. F, May 12, 2016 Deposition of Defendant Allen at 117:13-23).

## ARGUMENT

### A. Legal Standard

On a motion for summary judgment, the district court must determine whether there is a genuine issue as to any material fact and whether, in light of the undisputed facts, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002) ("Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact"); *Ayala v. Infinity Ins. Co.*, 713 F. Supp. 2d 984, 986 (C.D. Cal. 2010) ("Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.") (Citing Fed. R. Civ. P. 56).

If, however, "under any reasonable construction of the evidence and any acceptable theory of law, one would be entitled to prevail, a summary judgment against him cannot be sustained." *Industrial Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1340 (9th Cir. 1970).

"An issue of material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095, 1098 (9th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248.

"The moving party has 'the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material lodged must be viewed in the light most favorable to the opposing party.'" *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)). In addition, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Furthermore, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000) (internal citations and quotations omitted).

**B.    Defendants' Wholly Fail to Meet the Legal Standard as to any Cause of Action and Their Motion Must be Denied on its Face**

Defendants fail to present few, if any, facts that relate to or pertain to the issue of whether or not Plaintiff was raped.  A thorough review of Defendants' separate statement proved that all of the alleged undisputed facts are either irrelevant, attack the credibility of the Plaintiff in an attempt to compel the court to consider inadmissible character evidence, or deal with the self-serving subjective beliefs of defendants, which in themselves create triable issues of fact.  Essentially, almost none of the facts that are undisputed would assist defendants in obtaining a summary judgment as they are either inapposite or purely inadmissible.  As such, without even considering Plaintiff's opposition to the Motion, Defendants motion must be denied because it fails horribly to even remotely show that a triable issue of facts does not exist.

**C.    Defendants Are Not Entitled to Summary Judgment on Plaintiff's Claims of Sexual Battery, Battery, Trespass or Conspiracy**

**1.    Plaintiff Has Come Forward With Evidence Showing She Was Extremely Intoxicated the Night of the Rapes**

Perhaps the most obvious material fact in dispute in this case is whether or not Plaintiff Doe was intoxicated. Plaintiff Doe has explained, and evidence in the record supports her claim, that she drank before she arrived at the Residence. She testified that she drank vodka at her apartment while waiting for Defendants' driver, who was three hours late, and she drank wine while in the car on the way to the house. (Doe Decl., Exh. A, January 21, 2016 Deposition of Plaintiff Doe at at 150-54).

Moreover, it bears emphasizing that even Defendants' own expert concluded that Plaintiff Doe was intoxicated. (Anand Decl., Exh. O, Report of Defendant Rose's Rebuttal Expert, Dr. Lykissa, Ph.D at 2) ("The deposition of the Plaintiff substantiates her own statements about the consumption of copious amounts of various alcoholic beverages. . . . Plaintiff consumed vodka followed by wine. . . . Plaintiff next consumed tequila. The presentation of the Plaintiff that night was described by Miss Jessica "Kendra" Groff. The symptoms the Plaintiff describes at the house of the Defendant that night are of advanced Alcohol Intoxication with vomiting which places her blood alcohol content at levels greater than 0.2 g/dL(Ref 1)"); *Id.* ("I strongly believe based on the record I have consulted of this case and the references cited that Jane Doe . . . the evening of August 26, 2013 was *suffering from a pronounced Alcoholic Intoxication*.") (Emphasis added).

Moreover, Defendants expert believes that Defendants did not give Plaintiff Rohypnol, but he has not evaluated or expressed any opinion as to whether she was given one of dozens of other drugs which may and are used to rape. (Anand Decl., Exh. J, Report of Okorie Okorocha, M.S., M.S., J.D.).

Because Plaintiff Doe is entitled to all reasonable inferences supported by the evidence, on this basis alone the court should easily conclude that Defendants' motion for summary judgment be rejected and that this case should move forward to trial.

In addition to the claims made by Defendants' own expert regarding Plaintiff Doe's level of intoxication, Doe's companion that evening stated that she felt it would be unsafe to leave Plaintiff Doe alone with Defendants in her intoxicated state and opted instead to bring Plaintiff Doe with her when she left the Residence. (Exh. N, Declaration of Jessica "Kendra" Groff at ¶ 9) ("I knew [Plaintiff] was very intoxicated . . . I definitely was not going to leave her there alone. I did not feel safe and did not believe [Plaintiff] would be safe if left alone."). Incredibly, even

1  Defendant Rose himself testified that he believed that Plaintiff Doe had more than
2  two drinks while at the Residence. (Anand Decl. Exh. D, June 17, 2016 Deposition
3  of Defendant Rose at 47) ("Q: Do you have a belief that she [Plaintiff] drank more
4  than two that night? A: Yeah.").

5  Finally, there is the fact that Plaintiff Doe severely burned her hand by
6  placing it on the hot gemstones that lined the fire pit outside. (Doe Decl., Exh. A,
7  January 21, 2016 Deposition of Plaintiff Doe at 159:8-117 ["Q: -- this is the fire pit
8  that you stuck your hands in? A: Yes. Q: Did you stick one hand in or both? A: I
9  stuck one hand in, my right hand. Q: Okay. And you did that because you were
10 drunk right? A: Yes. Q: Okay. And you burned your hand? A: Yes."]; *Id.* at 159:8-
11 160:1, 192:9-16, 208:7-11, 209:15-20; Doe Decl., Exh. B, June 14, 2016 Deposition
12 of Plaintiff Doe at 116:16-21; Groff Decl. at ¶13). A reasonable juror could use this
13 fact to infer that Plaintiff was likely very intoxicated, as such an action is one a
14 person whose judgment is impaired would do whereas a person who is sober would
15 be unlikely to do such an act. This inference is even more warranted when one
16 considers the record as a whole—the next morning Plaintiff Doe wrote, "My hand
17 bubbled up from the burns I was so wasted." Defendant Rose's Statement of
18 Undisputed Facts ("Def.'s SUF") ¶ 86.

19 Defendants' argument that the record is undisputed that Plaintiff was not in
20 fact intoxicated is baseless. Defendants claim, without citing any portion of the
21 record—despite their burden to do so for this motion—that, "While Plaintiff claims
22 to have been intoxicated during the night of August 26-27, 2013, Mr. Rose, Mr.
23 Allen, and Mr. Hampton believed that she was not intoxicated." Mem. of Points and
24 Authorities in Supp. of Def. Derrick Rose's Mot. for Sum. J. ("Def. Br.") at 12. As
25 illustrated above, the record is rife with evidence to support Plaintiff's claim that
26 she was in fact heavily intoxicated.

Moreover, the determination of whether or not to credit Defendants' "belief" goes to Defendants' credibility and is therefore properly a question for a jury, not a judge. On a motion for summary judgment, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*.

Just as importantly, Defendant's belief is irrelevant as battery and sexual battery are general intent torts. Furthermore, according to Defendant's own expert, Plaintiff was intoxicated to the point where she could not consent legally. Thus, not only is Defendants' Motion not well-taken, it is Plaintiff who should be granted summary judgment on this basis alone—she was incapable of consent, Defendants each testified that they were not incapacitated, and Defendants had sex with Plaintiff while she was incapable of consent.

Defendants have not come close to satisfying their burden of providing a basis for their motion and identifying those portions of the record that indicate the absence of any dispute concerning whether or not Plaintiff Doe was intoxicated. In fact, the record demonstrates the opposite—as illustrated above, there is deposition testimony that Plaintiff Doe drank before and during her cab ride to the Residence. Pl. Dep. Tr. at 150-52. There is conflicting testimony on who poured the drinks the parties consumed during the time Plaintiff was at the house. *Compare* Grof Decl. ¶ 3 (Ryan Allen poured the tequila shots) *with* Allen Dep. Tr. at 118 ("Q: And at no point you offered them any tequila? A: No. [Plaintiff] poured the shots throughout the night.") There is also Ms. Groff's sworn statement that she did not feel comfortable leaving Plaintiff Doe alone with Defendants because of her level of intoxication. (Exh. N, Declaration of Jessica "Kendra" Groff ¶ 9). Finally, there is evidence in the record indicating that Plaintiff drunkenly burned her hand, including a text message from the morning after the gang rape where Plaintiff, describing the injury to her hand, stated that she was "so wasted." Def.'s SUF ¶ 86. Because the record is rife with facts that a reasonable juror could rely on to conclude that

Plaintiff Doe's version of events is what occurred, Defendants' motion for summary judgment must be denied.

### 2. Plaintiff Has Come Forward With Evidence that She Did Not Consent to the Sexual Encounter with Defendants

Cal. Civ. Code § 1708.5(a) provides as follows:

"A person commits a sexual battery who does any of the following:

(1) Acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results.

(2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results.

(3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results."

Lack of consent supports an element of a sexual battery claim. *Jacqueline R. v. Household Faith Family Church*, 97 Cal. App. 4th 198, 208 (2002) ("The lack of consent . . . would support one element of her cause of action for sexual battery.") A heavily intoxicated and/or unconscious person is incapable of consent. *See, e.g.*, Cal. Pen. Code § 261(a) ("Rape is an act of sexual intercourse . . . (3) Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused. (4) Where a person is at the time unconscious of the nature of the act, and this is known to the accused. As used in this paragraph, 'unconscious of the nature of the act' means incapable of resisting because the victim meets any one of the following conditions: (A) Was unconscious or asleep. (B) Was not aware, knowing, perceiving, or cognizant that the act occurred.").

Plaintiff's Memorandum of Points and
Authorities in Opposition to Defendant
Rose's Motion for Summary Judgment     10     *Doe v. Rose*
Case No. CV 15-7503-MWF(JCx)

Plaintiff has pointed to depositions and phone records contained in the record that provide ample support for a reasonable juror to conclude that she was heavily intoxicated the night before and on the morning of the gang rape. Indeed, the text messages between Plaintiff Doe and Defendant Rose on the morning of the rape tellingly end with Rose texting Plaintiff Doe "Hello?" (Def. SUF ¶ 50) followed by texts twenty-three to twenty-five minutes later from Defendant Allen stating "We outside" and "Wake yo ass up". *Id.* ¶ 55. Such evidence easily supports the conclusion that Plaintiff had in fact become unconscious by the time Defendants arrived at her apartment. Defendant Allen's phone records also point to this conclusion because he made six one-minute calls to Plaintiff's cell phone. (Anand Decl., Exh. K, Phone Records produced by Defendant Ryan Allen on May 12, 2016). A reasonable juror could certainly infer from the volume of very short calls that Defendants were trying to wake Plaintiff Doe from her unconscious state and, as the records show, only reached her voicemail. (Anand Decl., Exh. K, Phone Records produced by Defendant Ryan Allen on May 12, 2016). Defendants also testified that they called and Plaintiff was not picking up her phone. (Anand Decl., Exh. E, May 13, 2016 Deposition of Defendant Hampton at 14:12-154:2). Viewing this evidence in the light most favorable to Plaintiff Doe, as the court must since she is the nonmoving party, Defendants' motion for summary judgment must fail.

More importantly, the record contains evidence that at least twice on previous occasions Plaintiff Doe flatly refused Defendant Rose's requests that she engage in group sex with his friends. (Doe Decl., Exh. A, January 21, 2016 Deposition of Plaintiff Doe at 77:25-78:9 ["A: . . . And then he was like, 'would you – do you have any friends who are strippers, or would you mind if I asked you if a stripper can be involved in our relationship, in our intimacy?' Q: And in early 2012, when he raised that idea with you, what did you say? A: Just sit quiet, and I was like, 'No, I would never – I would never do that.' That – I was in shock."]; *Id.* at 78:16-82:16

1  ["Q: When was the next time he raised the issue of having more than just the two
2  of you in a bedroom environment? A: It was in 2013 around May, midyear. Yeah.
3  May, June. . . So I was on my way to meet him, and he texted me stating that he
4  was with his friends. He was like . . . 'I want you to be with my friends, meaning
5  we want to be all together. I want to be with his girlfriend.' And I was just in shock,
6  and I asked him, 'Are you telling me you want me to fuck your friend? Is that what
7  you're telling me?' . . . I didn't go to the hotel. Once, you know, he told me that, I
8  turned around and went home."]; *Id.* at 76:17-25, 79:1-25, 80:1-6, 82:12-25, 83:1-
9  11,84:1-25; Doe Decl., Exh. B, June 14, 2016 Deposition of Plaintiff Doe at 140:4-
10 142:4, 150:8-151:8, 154:9-16; Anand Decl., Exh. D, June 17, 2016 Deposition of
11 Defendant Rose at 16:19-23, 45:9-22, 46:17-19, 80:21-82:2 ["Q: All the other times
12 that you pushed that issue with her, she refused; isn't that right?...A: Yeah."]).

13     A reasonable juror could rely on this evidence to conclude that Plaintiff Doe
14 did not in fact consent to having sex with all of the Defendants. (Anand Decl., Exh.
15 O, Report of Dr. Elena Konstat, Ph.D., Q.M.E.). Because Defendants have not
16 come forward with evidence to support their claims that Plaintiff did in fact consent,
17 apart from their own self-serving statements, "beliefs," and offensive
18 "assumptions", their motion for summary judgment must fail.

19     **3.    The Record Supports Plaintiff's Claims that**
20     **She Did Not Invite or Let Defendants Into Her Home**

21     The record is ambiguous regarding whether or not Plaintiff Doe actually
22 invited **Defendant Rose** to her apartment on the morning of the gang rape. [FN: Of
23 course, even if she did invite Defendant Rose to her apartment, this invitation cannot
24 automatically be considered an invitation to sexual intercourse. While normally this
25 would not bear mention, because of the stereotypes, offensive assumptions, and
26 rape myths that riddle Defendants' papers, it bears emphasizing here.]] However,
27 even if we view the record to support the notion that Plaintiff Doe did in fact invite
28

*Plaintiff's Memorandum of Points and
Authorities in Opposition to Defendant
Rose's Motion for Summary Judgment*       12       *Doe v. Rose
Case No. CV 15-7503-MWF(JCx)*

Defendant Rose back to her apartment in her impaired state, ***the record is devoid of any evidence whatsoever that that Plaintiff invited all of the Defendants to her apartment***. (Groff Decl. at ¶3; Doe Decl., Exh. A, January 21, 2016 Deposition of Plaintiff Doe at 158:25-160:24, 166:12-18, 219:11-24, 222:18-23; Doe Decl., Exh. B, June 14, 2016 Deposition of Plaintiff Doe at 89:14-22, 117:9-21, 187:11-188:16; Doe Decl., Exh. C, Doe_Production_Set_One_122-123).

In fact, the only person who mentions the involvement of the other Defendants in the text messages is Defendant Rose. Def.'s SUF ¶ 49 ("we on our way"). The text messages show that Defendant Rose wanted Plaintiff Doe to return to the Residence. Id. ¶ 39. Once it was clear she wasn't going to return (*id.* ¶ 48), all of the Defendants decided to go to her.

It is reasonable that Plaintiff Doe may have, in her intoxicated state, invited the man she had been intimately involved with for two years over to her home. However, this is not an invitation for sexual interaction and the testimony from Plaintiff is that she had no intention of having sex with Defendant Rose when she went to the Residence and was incapacitated by the time she was back at her apartment; and, the testimony from Defendant Rose is that he had no intention of having sex with the Plaintiff when he was going to her apartment. (Anand Decl. Exh. D, June 17, 2016 Deposition of Defendant Rose at 78:21-79:15). Finally, the clear testimony shows that Plaintiff adamantly refused to allow Defendants Hampton and Allen in her home and was fearful of them, even in her drug-induced state. (Groff Decl. at ¶3; Doe Decl., Exh. A, January 21, 2016 Deposition of Plaintiff Doe at 158:25-160:24, 166:12-18, 219:11-24, 222:18-23; Doe Decl., Exh. B, June 14, 2016 Deposition of Plaintiff Doe at 89:14-22, 117:9-21, 187:11-188:16; Doe Decl., Exh. C, Doe_Production_Set_One_122-123).

It is another thing entirely to conclude that this possible invitation to Defendant Rose that morning extended to all of the Defendants, despite the record

evidencing Plaintiff's stark rejections of Rose's previous suggestions that she engage in group sex. (Doe Decl., Exh. A, January 21, 2016 Deposition of Plaintiff Doe at 77:19-25; 78:1-9). Even if Rose thought his touching was "welcome," (Def. Br. at 11) he should have known that Plaintiff Doe was intoxicated to the point of being incapable of giving consent, and obviously knew that she was unconscious at the time of the gang rape—moreover, it doesn't matter what he thought: he had the requisite general intent which, coupled with Plaintiff's inability to consent, equates to rape.

Defendants have blithely claimed that Plaintiff Doe invited all Defendants to her apartment, but have not cited one scintilla of evidence in the record to support that claim. Def. Br. at 5 ("Mr. Rose, Mr. Allen, and Mr. Hampton came to Plaintiff's apartment ***at her request***, where they stayed for approximately an hour. SUF No. 56"). As described above, Defendants' self-serving and conclusory descriptions of the events are wholly unsupported by the record. What the record does show is that it is possible that Plaintiff ***may have*** invited Defendant Rose to her apartment, but that no reference ***whatsoever*** was made concerning the other Defendants. [FN: Again, it bears emphasizing that an invitation to come over is not automatically an invitation to have sexual intercourse, despite what Defendants may understand is their entitlement "as men." (Anand Decl. Exh. D, June 17, 2016 Deposition of Defendant Rose at 81:12-25 ["Q: Did either Mr. Hampton or Mr. Allen tell you why they wanted to go to Plaintiff's home on the night in question? A: No. No. Q: So they just said, 'Hey, it's the middle of the night. Let's go over to Plaintiff's house' and they never gave you a reason why they wanted to go over there? A: No. Q: And that didn't seem odd to you at all? A: No, but we men. You can assume. Q: I'm sorry? A: I said we men. You can assume. Like we leaving to go over to someone's house at 1:00, there's nothing to talk about."]).

### 4. Whether or not Plaintiff "Lied" is a Credibility Issue Properly Resolved by a Jury and Impermissible as Evidence to Support a Summary Judgment Motion

Defendants have taken pains to point out that Plaintiff Doe "lied" about various things to Defendant Rose, including that she was going to take a cold shower with a vibrator, that she was going to visit a girl on girl store, and that she purchased a "sex belt" when she already owned it. Def.'s SUF ¶¶ 12-16.

The issue of whether a witness lied, and if so, the weight to give to her testimony, is a question for the finder of fact, not the court. *See, e.g.*, 75A Am. Jur. 2d *Trial* § 668 ("The credibility of witnesses who are competent to testify is a matter within the province of the jury"); *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002) ("Whether or not the evidence in the record establishes liability on the part of the defendants depends on the resolution of disputed questions of fact and determinations of credibility, as well as on the drawing of inferences, all of which are manifestly the province of a jury") (citing *United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir. 1987).

A jury could reasonably infer from all of these "lies" that Plaintiff Doe was actually quite insecure about her comparative lack of experience and experimentation and made up what she could to please Defendant Rose and keep him interested in her. Indeed, the record demonstrates that Defendants were very experienced; in addition to the kind of lifestyle that is customary for professional basketball players and their "entourage," the record contains evidence that Defendants engaged sex workers on a regular basis around the same time as Plaintiff's sexual assault at their hands. (Anand Decl., Exh. K, Excerpt of Phone Records produced by Defendant Ryan Allen on May 12, 2016, and advertisements of sex workers called within weeks of rapes; Anand Decl. Exh. D, June 17, 2016 Deposition of Defendant Rose, Part 1 at 26:22-24, 27:6-9, Part 2 at 8:22-11:19). A

reasonable fact finder could easily conclude, even without the benefits to which Plaintiff Doe is entitled as the nonmovant here, that the record supports Plaintiff Doe's version of the events of that night and morning.

### C. Defendants Have Not Met Their Burden for Summary Judgment; Their Motion Must Be Denied As a Matter of Law

Defendants motion papers are riddled with instances where, incredibly, they refer to alleged "facts" that are not yet in evidence and claim that certain facts are uncontested while citing instances of where Plaintiff has disputed them. The defense cannot prevail on a motion for summary judgment by referencing alleged "evidence" that they have yet to provide, and by mischaracterizing clearly disputed facts as undisputed simply because they would prefer they be that way.

As the moving party, Defendant Rose bears the burden of demonstrating the absence of any material issue of fact. *Zoslaw v. MCA Distributing Corp.*, 693 F2d 870, 883 (9th Cir. 1982) ("The burden of demonstrating the absence of an issue of material fact lies with the moving party."). Defendant must satisfy this burden by supporting assertions by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). *See also* Fed R. Civ. P. 56, advisory committee's note (2010) ("Materials that are not yet in the record—including materials referred to in an affidavit or declaration—must be placed in the record."); *Fraz v. Goldman & Warshaw P.C.*, No. 11-cv-02577, 2012 U.S. Dist. LEXIS 148744, at *16 (E.D. Pa. Oct. 16, 2012) ("the Agreement has not been placed in the record. Therefore, under Rule 56(c)(1)(A), reference to the 2002 Agreement . . . cannot be considered"); *Trinsey v Pagliaro*, 229 F. Supp. 647, 649 (E.D. Pa. 1964) ("Statements of counsel in their briefs or argument while enlightening to court are not sufficient for purposes of granting motion to dismiss on summary judgment"); *Walker v. Bd. Of Regents*, 300 F. Supp. 836, 857 (W.D. Wis. 2004) ("Briefs are not evidence. . . . The court

will not consider facts contained only in a brief") (internal citations and quotations omitted).

Instead of citing to particular aspects of the record, Defendants ask this court to take their word for it that they will demonstrate their claims with sufficient evidence at some later point in time. This makes certain that Defendants are not entitled to summary judgment—even they contend that they need to provide further evidence in order to rebut Plaintiff's claims. Indeed, the fact that Defendants are alluding to how they will present their claims at trial shows that they know that their motion for summary judgment should fail and reflects on their good faith belief as to the merits of their motion—they know that their motion is frivolous, and a waste of this court's and opposing counsel's time—since the whole point of a summary judgment motion is so that a case does not go to trial. *See, e.g.*, Def. Br. at 4 n.5 ("***At trial***, Mr. Rose will argue that Mr. Rose and Mr. Hampton had consensual sex with Plaintiff at the Beverly Hills home, initiated by Plaintiff. SUF N. 34.") It is incredible that Defendants would include the contention that Plaintiff had consensual sex at the Beverly Hills house in their statement of undisputed facts when, just one sentence before, they admit that this allegation is a disputed fact. Def. Br. at 4:6-7 ("Plaintiff claims she did not have sex with anyone at the Beverly Hills home that night.")] *See, e.g.*, Def. Br. at 2 n. 1 ("Mr. Rose ***will include*** the relevant portions of the final transcript when he files the reply brief."); *Id.* at 3 n. 3 ("Mr. Rose ***will present*** expert testimony from Dr. Ernest Lykissa that ***will prove*** that Plaintiff was not drugged . . ."); *Id.* at 11 n. 9 ("***At trial,*** Mr. Rose ***will show*** that all sexual contact between himself and Plaintiff was consensual.") (Emphasis added). As this Court well knows, discussing evidence that has not been produced defeats the purpose of a motion for summary judgment. Such anticipated evidence, which has yet to be produced, cannot be challenged in the opposition. Furthermore,

since such evidence cannot be refuted (as it has not been produced), a triable issue of fact necessarily exists.

Defendants also include allegations, which by definition are not facts, as examples of "undisputed facts." Def. Br. at 4:4-5 ("Her friend Jessica Kendra Groff and Mr. Allen ***allegedly*** yelled at each other . . . SUF No. 32). Defendants also include clearly disputed facts in their list of undisputed facts. *Compare* Def. Br. at 7 n. 8 ("Ryan Allen paid for Plaintiff's cab fare and also gave her money before she left the Beverly Hills residence during the early morning hours of August 27, 2013. SUF No. 79") *with* Pl. Tr. at 226: 11-19 ("Q: Okay. Did you after the alleged incident ever ask Mr. Rose for reimbursement for anything that you had paid for, like a cab ride or anything? A: Yes. Q: Okay, and what is it you asked for reimbursement for? A: For a cab. Q: Okay. And which cab ride was it you were asking for reimbursement for? A: The one from that – that day, so the night of the 27th or the morning of the 27th."); *Compare* Def. Br. at 12 ("While Plaintiff claims to have been intoxicated during the night of August 26-27, 2013, Mr. Rose, Mr. Allen, and Mr. Hampton believed that she was not intoxicated.") *with* Groff Decl. ¶ 3 ("Upon arrival [at the Beverly Hills residence, Plaintiff] was inebriated."); ¶ 9 ("I knew [Plaintiff] was very intoxicated, and Ryan was being so rude, I definitely was not going to leave her there alone. I did not feel safe and did not believe [Plaintiff] would be safe if left alone.").

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court strike or deny Defendant Rose's motion for summary judgment.

Dated: June 27, 2016

ANAND LAW, PC
By: /s/ Brandon J. Anand
    BRANDON J. ANAND
    *Attorneys for Plaintiff*
    JANE DOE