**BAUTE CROCHETIERE & GILFORD LLP**
MARK D. BAUTE (State Bar No. 127329)
mbaute@bautelaw.com
COURTNEY A. PALKO (State Bar No. 233822)
cpalko@bautelaw.com
777 South Figueroa Street, Suite 4900
Los Angeles, California 90017
Telephone: (213) 630-5000
Facsimile: (213) 683-1225

*Attorneys for Defendant*
DERRICK ROSE, an individual

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JANE DOE (A Pseudonym),<br><br>Plaintiff,<br><br>v.<br><br>DERRICK ROSE, an Individual; RANDALL HAMPTON, an Individual; RYAN ALLEN, an Individual; and DOES 1-10 Inclusive,<br><br>Defendants. | Case No. CV 15-7503-MWF(JCx)<br><br>Complaint Filed:  August 26, 2015<br><br>**DEFENDANT DERRICK ROSE'S TRIAL BRIEF**<br><br>**Further Pretrial Conference:**<br>Date:          September 29, 2016<br>Time:          10:00 a.m.<br>Location:     Courtroom 1600<br><br>**TRIAL:**<br>Date:          October 4, 2016<br>Time:          8:30 a.m.<br>Location:     Courtroom 1600<br><br>Judge:   Hon. Michael W. Fitzgerald<br><br>Pretrial Conference:  September 20, 2016<br>Trial Date:   October 4, 2016 |

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

# **TABLE OF CONTENTS**

Page(s)

I.      INTRODUCTION ........................................................................... 1

II.     STATEMENT OF THE CASE ........................................................ 1

    A.    Ms. Doe's Long-Term Consensual Sexual Relationship with Mr. Rose. ................................................................................... 1

    B.    The Evening of August 26-27, 2013. .................................... 2

    C.    Ms. Doe Asked Mr. Rose for Money at 7:49 a.m. on the Morning of August 27, 2013 After She Awoke. ................................... 5

    D.    Claudia Carleo, Ms. Doe's Roommate, Testified that Ms. Doe Was "Happy" and "Smiling" and Acted Normal Before Work the Morning of August 27, 2013. ................................................ 5

    E.    Keyana LaVergne, Ms. Doe's Then Colleague, Friend, and Later Roommate, Testified that Ms. Doe Acted Normal at Work on August 27, 2013. ................................................................. 6

    F.    Ms. Doe Became Frustrated When Mr. Rose Did Not Respond to Her Text Messages During the Following Days. .................... 7

    G.    Ms. Doe Parties in Las Vegas with Her Friend Gabriela Chavez in Mid-September 2013, Two Weeks After the Alleged Rape. .... 8

    H.    Ms. Doe Admits She Lied (In Writing) Repeatedly to Mr. Rose on August 26-27, 2013. ....................................................... 8

    I.    Ms. Doe's Alleged Emotional Distress Damages. ................... 9

III.    PLAINTIFF'S CLAIMS ............................................................... 10

IV.     MR. ROSE'S KEY EVIDENCE ................................................... 12

    A.    Despite Being Represented by Counsel, Ms. Doe Took No Reasonable Steps to Substantiate Her Rape Claim. ............... 12

    B.    Ms. Doe's Contemporaneous Text Exchanges with Mr. Rose Demonstrate Consent. ......................................................... 14

    C.    Ms. Doe Consented to Sexual Intercourse with Mr. Rose for 20 Months, Including the Early Morning of August 27, 2013, when Ms. Doe was Fully Capable of Providing Consent. ............... 18

    D.    Ms. Doe Repeatedly Invited Mr. Rose to Her Apartment on the Early Morning of August 27, 2013 and Opened Three Doors to Greet Her Guests. .............................................................. 24

    E.    Mr. Rose Did Not "Intend" to Cause Emotional Distress to Ms. Doe, Ms. Doe Did Not Suffer "Severe" Emotional Distress, and

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

1

Mr. Rose's Conduct was Not a "Substantial Factor" in Causing Ms. Doe's Alleged Severe Emotional Distress........................................26

V.      EVIDENTIARY ISSUES.................................................................................27

VI.     ISSUES OF LAW .............................................................................................28

VII.    PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES FROM MR. ROSE...............................................................................................................28

VIII.   CONCLUSION .................................................................................................29

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

ii

Case No. CV 15-7503-MWF(JCx)

**DEFENDANT DERRICK ROSE'S TRIAL BRIEF**

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>STATE CASES</u>

*Moran v. Endres*,
   135 Cal. App. 4th 952 Cal. Rptr. 3d 786 (2006) ................................................. 11

## <u>STATUTES</u>

California Civil Code § 1708.5 ........................................................................ 10

California Civil Code § 52.4 ........................................................................... 10

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

## I.   <u>INTRODUCTION</u>

In accordance with the Court's Amended Order re Jury Trial (ECF # 46 at 6), Defendant Derrick Rose hereby submits his Trial Brief.

Ms. Doe contends that on August 27, 2013, Mr. Rose, Mr. Hampton, and Mr. Allen trespassed and entered her apartment building, apartment, and bedroom without authorization and engaged in sexual interaction with Ms. Doe without her consent.  Mr. Rose, Mr. Hampton, and Mr. Allen deny these allegations and maintain that they were invited repeatedly to her apartment, Ms. Doe provided them with her address, and Ms. Doe escorted them into her apartment and bedroom, and had consensual sexual intercourse in the early morning hours of August 27, 2013.

As the Court has properly identified, "the central issue in this action:  whether Plaintiff consented to sexual intercourse with Defendants in early morning of August 27, 2013."  ECF # 169 at 1.  Accordingly, the jury must decide "two related questions:  Whether Plaintiff consented to sexual intercourse with Defendants in the early morning of August 27, 2013, and if she did not, whether Defendants reasonably believed that she did."  ECF # 169 at 5.  Plaintiff's credibility (in the face of repeated and well-documented lies) is at the center of the issues of consent (to sex and entry to her apartment), as is her financial motivation in seeking millions of dollars in emotional distress damages from her former lover, a wealthy celebrity.

## II.   <u>STATEMENT OF THE CASE</u>

Mr. Rose summarizes the case he will present at trial.

### A.   <u>Ms. Doe's Long-Term Consensual Sexual Relationship with Mr. Rose.</u>

In October 2011, Ms. Doe met Derrick Rose, a professional basketball player who then played for the NBA Chicago Bulls and now plays for the New York Knicks. She liked him a lot and admitted that she wanted to marry him.  They had consensual sexual intercourse twice in 2011.  They also saw each other approximately six other times in 2011. Ms. Doe and Mr. Rose saw each other approximately ten times in 2012, and engaged in consensual sexual intimacy during eight of those meetings.  Plaintiff

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

and Mr. Rose got together twice in 2013 prior to the night of August 26, 2013.  In July 2013, Mr. Rose stopped communicating with Ms. Doe and terminated his involvement with her.  Ms. Doe and Mr. Rose will testify as to these facts, which are undisputed.

### B.    The Evening of August 26-27, 2013.

Mr. Rose invited Ms. Doe to a home he was renting in Beverly Hills, California on August 26, 2013, at which point he hadn't had intercourse with Ms. Doe for approximately five months.  Mr. Rose had tried to end things a month earlier but Ms. Doe had started texting him again.  That day, Ms. Doe and Mr. Rose exchanged many text messages, including the following:

- 8/26/2013 12:00:33 PM Plaintiff to Mr. Rose: "Babe I need that pink belt I sent you the picture off and I have a chick she a massage therapist in the valley can u send a driver to pick me and then ill go get her from work. I told her I would take care of her."

- 8/26/2013 12:12:10 PM Mr. Rose to Plaintiff: "Send me the address."

- 8/26/2013 12:18:15 PM Plaintiff to Mr. Rose: "[address omitted]  Ima have him take us to the girls on girls store and grab the belt u want anything else from there."[1]

Rose Trial Ex. 2.  Plaintiff texted pictures of herself wearing a sex belt along with a picture of the sex belt to Mr. Rose; she wanted him to think she was purchasing the sex belt but she already owned it.

On August 26, 2013, Mr. Rose sent a driver to pick Ms. Doe up and bring her to his rental home.  Ms. Doe self-reports that she consumed an unspecified amount of

---

[1] At her deposition, Plaintiff admitted that many of the statements she texted to Mr. Rose were lies.  She lied when she told Mr. Rose that she was going to take a cold shower with her vibrator, that she was sexually aroused, that Plaintiff was going to visit the girls on girls store, that her friend wanted Ecstasy, and that Mr. Rose owed Plaintiff money for a sex belt that she had purchased.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

vodka while she waited for the driver, who arrived at 9:00 p.m.[2]  Plaintiff self-reports that she consumed a personal bottle of red wine in the car on the way to Mr. Rose's rental house, which she shared with her friend Jessica Kendra Groff.  Ms. Groff, who lived in a different Los Angeles neighborhood than Ms. Doe, was also picked up in the same car, which drove them to Mr. Rose's rental home.  Ms. Groff is the "chick" who was "a massage therapist in the valley" that Ms. Doe texted Mr. Rose that she was bringing with her along with the sex belt that Ms. Doe had sent a picture of to Mr. Rose.

Mr. Rose, Mr. Hampton, and Mr. Allen were at the Beverly Hills rental home when Ms. Doe and Ms. Groff arrived.  After arriving at Mr. Rose's rental home, Ms. Doe consumed tequila that she had requested Mr. Rose provide for her; she, Ms. Groff, Mr. Rose, Mr. Allen, and Mr. Hampton all shared the same bottle and did not finish it. Ms. Doe, who had no tests for any date rape drugs (Doe Tr. at 180:19-23), self-reports that she was intoxicated and in and out of consciousness but does not  know if she was drugged.[3]  Mr. Rose, Mr. Allen, and Mr. Hampton did not add Rohypnol or any other drugs to Ms. Doe's drinks or the drinks of anyone else at the Beverly Hills home the night of August 26, 2013; there were no drugs at the house that night.[4]  Mr. Rose, Mr. Allen, and Mr. Hampton did not know that Ms. Doe was intoxicated and they reasonably believed that she was not intoxicated.  They saw her drink only a small

---

[2] Plaintiff testified that her memory of August 26-27, 2013 is vague and that she does not remember portions of the night.

[3] At trial, Mr. Rose will present expert testimony from Dr. Ernest Lykissa that will prove that Plaintiff was not drugged.  Had Rohypnol been administered at the Beverly Hills home, Ms. Doe would not have been able to send and receive over 25 text messages from the taxi, walk from the taxi to her apartment, or wake up four hours later and go to work for a full day.

[4] Plaintiff testified that Mr. Rose did not pour tequila; it was Ryan Allen who poured tequila shots.  At trial, Mr. Rose will show that Plaintiff poured the drinks at the Beverly Hills home that night.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

**DEFENDANT DERRICK ROSE'S TRIAL BRIEF**

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

amount of tequila.  Her speech was not slurred, she was communicating clearly, she was walking normally.

Ms. Doe remained at the home for approximately three hours.  At trial, Mr. Rose, Mr. Allen, and Mr. Hampton will testify that they had consensual sexual interaction with Ms. Doe at the Beverly Hills home, initiated by Ms. Doe.  Ms. Doe and Ms. Groff left the Beverly Hills home in a taxi after midnight.  Ms. Doe texted Mr. Rose from the taxi, including sending him her home address; she wanted to see him again that night.  Ms. Doe asked Mr. Rose to come to her apartment five times.   She and Mr. Rose texted, in part:

- 8/27/2013 01:40:32 AM Plaintiff to Mr. Rose:  "No she was not anyways fuck the bitch . . I left my belt and my shit n yo bathroom. And **u need to come to me right now**."
- 8/27/2013 01:42:14 AM Mr. Rose to Plaintiff "What's the address"
- 8/27/2013 01:43:15 AM Plaintiff to Mr. Rose "[address provided]"
- 8/27/2013 01:45:21 AM Mr. Rose to Plaintiff "I'm finna have my guy come pick you up."
- 8/27/2013 01:46:19 AM Plaintiff to Mr. Rose "**Come with him babe**"
- 8/27/2013 01:55:00 AM Plaintiff to Mr. Rose "**I need u to come with him**"
- 8/27/2013 01:56:45 AM Plaintiff to Mr. Rose "**So I want you here too**"  S
- 8/27/2013 02:03:27 AM Plaintiff to Mr. Rose "I know he Will, **I want u here too**"

Rose Trial Ex. 2.

Plaintiff was lucidly communicating with Mr. Rose until 2:09 a.m. on August 27, 2013.  Ms. Groff was convinced enough of Ms. Doe's sobriety to leave Ms. Doe alone in a taxi in the middle of the night.

Mr. Allen also sent text messages to Ms. Doe in the early morning of August 27, 2013.  He wrote:

- 8/27/2013 02:19:33 AM Mr Allen to Plaintiff "Derrick is coming to we'll call when we're outside"

- 8/27/2013 02:50:40 AM Mr. Allen to Plaintiff "We outside"

Rose Trial Ex. 4.

Mr. Allen called Ms. Doe five times over a four-minute span to announce their arrival, and the final two calls lasted two minutes each, when Ms. Doe answered the phone and escorted them inside.  Rose Trial Ex. 6.

Mr. Rose, Mr. Allen, and Mr. Hampton came to Ms. Doe's apartment at her request, where they stayed for approximately an hour.  Plaintiff greeted Mr. Rose, Mr. Hampton, and Mr. Allen, let them into the building, and escorted them to her apartment and her bedroom.[5]  Plaintiff engaged in consensual sexual intercourse with Mr. Rose. Mr. Rose was not present and does not know what happened in Ms. Doe's bedroom with Mr. Allen or Mr. Hampton.   Claudia Carleo, Ms. Doe's roommate whose deposition testimony will be used at trial, was in the same three-bedroom apartment at the time and did not hear anyone make noises or scream that night.

**C.** **Ms. Doe Asked Mr. Rose for Money at 7:49 a.m. on the Morning of August 27, 2013 After She Awoke.**

At 7:49 a.m., Plaintiff texted Mr. Rose to ask for reimbursement for the sex belt and cab fare from the previous night.

- 8/27/2013 07:49:38 AM Plaintiff to Mr. Rose "I'm hangover, didn't make it to work, and Kendra is blowing my phone up  U never payed me back or even payed for Kendras Taxi."

Rose Trial Ex. 2.

**D.** **Claudia Carleo, Ms. Doe's Roommate, Testified that Ms. Doe Was "Happy" and "Smiling" and Acted Normal Before Work the Morning**

---

[5] Plaintiff's roommate, who returned to the apartment at about 2:30 a.m. on the morning of August 27, 2016, had to use a key to enter the building and the apartment.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

**of August 27, 2013**.

Before going to work that morning, Ms. Doe spoke to her roommate Claudia Carleo, knocking on the door and waking up Claudia. Claudia Carleo testified that Ms. Doe acted normal the next morning.

### E. Keyana LaVergne, Ms. Doe's Then Colleague, Friend, and Later Roommate, Testified that Ms. Doe Acted Normal at Work on August 27, 2013.

Ms. Doe's then colleague Keyana LaVergne reported that Ms. Doe arrived at work on time the next day, around 9 a.m., and acted normal and that she "didn't seem battered" or off. She added that Ms. Doe didn't seem angry, didn't show any emotion, and didn't mention that she had been raped. Ms. LaVergne, whose deposition testimony will be used at trial, testified that to this day, Ms. Doe has never said that she was raped. After Ms. LaVergne learned that Ms. Doe was seeking $21.5 million in damages, Ms. LaVergne provided text messages exchanged between her and Ms. Doe to balleralert.com because she felt that Ms. Doe was fabricating this claim. Ms. LaVergne did not receive any compensation for doing so.

In a text to Ms. LaVergne, Plaintiff states: "I need a very wealthy good man should we go find one." LAVERGNE__000004. Plaintiff also texts her roommate: "then u can just give me the payment and since we finally filed against derrick we soon will be returning his tv and ill get us a Plasma." LAVERGNE__000083. Rose Trial Ex. 7.

**F.     Ms. Doe Became Frustrated When Mr. Rose Did Not Respond to Her Text Messages During the Following Days.**

After arriving at work, Ms. Doe again texted Mr. Rose, seeking reimbursement for the cab fare and sex belt.[6]  She did not accuse him of rape in 20 texts or on the phone.

- 8/27/2013 09:10:32 AM Mr. Rose to Plaintiff "Send me yo account stuff"
- 8/27/2013 09:13:16 AM Plaintiff to Mr. Rose "[Routing and account numbers withheld]" .
- 8/27/2013 02:51:08 PM Mr. Rose to Plaintiff "What bank and how much was it"
- 8/27/2013 02:54:16 PM Plaintiff to Mr. Rose "Bank of America 269"

Rose Trial Ex. 2.

Ms. Doe did not go to a doctor on the morning of August 27, 2013 or thereafter, nor did she get tested for sexually transmitted diseases or pregnancy.  Plaintiff did not get a rape kit.  Ms. Doe waited **two years** to file this lawsuit.  In December 2015, months after initiating this civil lawsuit seeking millions in damages, Plaintiff finally went to the police, who did not file charges and still have not filed charges.

In the following days after August 27, 2013, Ms. Doe sent additional texts to Mr. Rose and became frustrated when he did not respond and give her money.  In the text messages, Ms. Doe becomes increasingly frustrated until her final text to Mr. Rose on September 3, 2013: "Stop the games, this is not a joke . . . I hope u serious this time." Rose Trial Ex. 3.

Ms. Doe exchanged text messages with Ryan Allen on September 8 and 9, 2013. In these text messages, Plaintiff claimed falsely that she had to pay for a sex belt and a $200 credit card bill for a taxi and that she had to miss work.  Rose Trial Ex. 5.  Ryan

---

[6] Ryan Allen paid for Plaintiff's cab fare and also gave her money before she left the Beverly Hills residence during the early morning hours of August 27, 2013.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

1 │ Allen, however, gave money to both Ms. Doe and her taxi driver, Ms. Doe admitted

2 │ that she already owned the sex belt, and Ms. Doe admitted that she did not miss work.

3 │ On August 26, 2015, Ms. Doe filed this civil lawsuit against Mr. Rose.  Ms. Doe

4 │ now contends that she was raped at her apartment (not the Beverly Hills rental home)

5 │ during the early morning hours of August 27, 2013.

### G.   Ms. Doe Parties in Las Vegas with Her Friend Gabriela Chavez in Mid-September 2013, Two Weeks After the Alleged Rape.

Ms. Doe's friend Gabriela Chavez will testify about partying with Ms. Doe in Las Vegas in mid-September 2013–approximately two weeks after the alleged incident.  Ms. Chavez has photographs of Ms. Doe on social media partying in September and October 2013.[7]

### H.   Ms. Doe Admits She Lied (In Writing) Repeatedly to Mr. Rose on August 26-27, 2013.

At her deposition, Ms. Doe admitted that numerous statements she texted to Mr. Rose on August 26, 2013 were lies:

- She lied when she told Mr. Rose that she was going to take a cold shower with her vibrator.

- She lied when she told Mr. Rose that she was sexually aroused.

---

[7] From the outset of this case, Mr. Rose has been unfairly and materially prejudiced in his ability to defend himself against Ms. Doe's false and unfounded accusations against him due to (1) Ms. Doe's abuse of the "Jane Doe" pseudonym (intended for minors, criminal cases, true rape victims, and vulnerable individuals facing serious threats, not calculating 30-year-old former lovers with a financial agenda); and (2) under seal filings which allow Ms. Doe to hide relevant information about the case from the media and public.  Ms. Chavez is one illustration of how Mr. Rose has been handicapped.  More witnesses like Ms. Chavez would have come forward over the past year with probative evidence had the media and public been apprised of Ms. Doe's true identity and the facts and evidence in this case.  Ms. Doe's ex parte motion for reconsideration (ECF # 276) should be denied.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

- She lied when she told Mr. Rose that Plaintiff was going to visit the girls on girls store.
- She lied that her friend Jessica Kendra Groff wanted Ecstasy.
- She lied that Mr. Rose owed Plaintiff money for a sex belt because she already owned the sex belt and did not purchase it on August 26, 2013.

## I.    Ms. Doe's Alleged Emotional Distress Damages.

Ms. Doe's expert, Dr. Elena Konstat, first met Ms. Doe in late May 2016 and met her five times in the presence of her attorney.  Dr. Konstat opines that Ms. Doe suffers from post-traumatic stress disorder and is "temporarily totally disabled."  Dr. Konstat intends to testify about Ms. Doe's deeply religious upbringing, morals, and cultural values.  Dr. Konstat offers these opinions:

- Ms. Doe is "not the type of person that is going to give a consent for multiple sexual participation."  Konstat Tr. 64:15-17.
- "[Y]ou have to know where the patient comes from, in what – what environment the patient was raised and you have to know that there are differences in culture, in values, in religions.  So, in my – it is my opinion because I was born in Mexico City and that gives me the opportunity to understand where plaintiff is coming from, she comes from a very religious family.  She was raised in a very conservative way.  She already told me many – many incidents – or many recommendations that her mother and her father gave her when she was a girl and when she became an adolescent, the way she was raised.  And we spoke about her religion.  She's Catholic.  Mainly, 90 percent of the population in Mexico are Catholics.  And Catholics, they have values and they have morals, and you go to church and you listen to the priest.  And this is what she is.  You know, she's not a person that will go there to look for sex and multiple sex and all these adventures that we face in different cultures.  And I think her values are different.  I think she wants to be raised – and she was educated to – to become a mother, to raise her

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

children, to live with one man, to be honest, to be truthful, to be respected by a man. So those values are in – in her – in her personality. So that makes me believe that she's not the type of person that will consent for this kind of sexual activities." Konstat Tr. 67:1-68:8.

- Her strong family background (including parents married for over 55 years), abundant resources, life goals, and prior refusals indicate that she would never consent to sex with multiple men. Konstat Report at 2.

- She almost never goes out in a social context. Ms. Doe acknowledges that she has become hypervigilant and very cautious when meeting men, even in casual encounters. Konstat Report at 3.

- Ms. Doe indicates that she has not dated in almost two years and that she limits social contact almost entirely to females and family members. Ms. Doe indicates that she now has no interest in activities of a sexual nature. Her emotional pain has completely interfered with her libido. She also feels she does not have the mental or emotional capacity to initiate or participate in relationship with a man at this time. She acknowledges that in terms of social interaction with others, she simply wants to be left alone because of the severity of her anxiety and pronounced depression. She states that she used to be a very social person but no longer desires to participate in any kind of social activities. Konstat Report at 4.

## III.   PLAINTIFF'S CLAIMS

Plaintiff's complaint asserts nine claims against Mr. Rose:

**Claim I**: sexual battery in violation of California Civil Code § 1708.5;

**Claim II**: battery;

**Claim III**: trespass;

**Claim IV**: conspiracy to trespass, commit rape, battery;

**Claim V**: civil action for gender violence in violation of California Civil Code § 52.4;

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

1    **Claim VI**: intentional infliction of emotional distress;

2    **Claim VII**: negligent infliction of emotional distress;

3    **Claim VIII**: violation of the Ralph Act; and

4    **Claim IX**: claim for declaratory relief.  ECF #6 at 4.

5    Plaintiff also seeks punitive damages.

6    Ms. Doe appears to have abandoned her negligent infliction of emotional distress

7    claim because she failed to timely file anything in response to the Court's order "to

8    show cause why negligent infliction of emotional distress should be included in the

9    Final Pretrial Conference Order."  ECF # 260.

10    The Court also stated at the September 20, 2016 Pretrial Conference that civil

11    conspiracy is not an independent claim for relief.

> Allegations of civil conspiracy cannot constitute a separate claim for relief under California law. *See Moran v. Endres*, 135 Cal. App. 4th 952, 954, 37 Cal. Rptr. 3d 786, 788 (2006) ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.") (internal quotation marks and citation omitted).

ECF # 169 at 8.

19    Finally, the claim for declaratory relief is not part of the jury trial, but a matter

20    for the Court's determination.[8]

---

[8] ECF # 169 at 9 ("In her final claim for relief, Plaintiff asks the Court to declare Defendants' 'conduct violates the civil rights of women under the various Acts alleged [in the Complaint].' (Complaint ¶ 116).  The Court construes this claim as requesting a declaration judgment that Defendants violated the laws summarized above.  Accordingly, this claim may proceed as derivative of Plaintiff's remaining claims.").

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

## IV.   MR. ROSE'S KEY EVIDENCE

All objective, contemporaneous evidence supports consensual sexual activity with Mr. Rose.

### A.   Despite Being Represented by Counsel, Ms. Doe Took No Reasonable Steps to Substantiate Her Rape Claim.

Despite being represented by counsel immediately after August 26-27, 2013, Ms. Doe took no reasonable steps to corroborate her rape allegations.  Instead, she and her counsel's behavior deliberately made it exceedingly difficult for Mr. Rose to disprove Ms. Doe's self-reported and unsubstantiated claims against him.

(1)   Ms. Doe did not contemporaneously report the incident to law enforcement.  This is not a criminal case and Mr. Rose, Mr. Hampton, and Mr. Allen have never been charged or convicted of any crime in connection with Ms. Doe's accusations.  Ms. Doe falsely informed Mr. Rose's counsel that she had gone to the police in August 2013.  Only in December 2015 (after she had voluntarily inserted herself into the civil court system with this false claim seeking millions of dollars against a celebrity) did she go to the police – who refused to file charges.

(2)   Ms. Doe did not obtain a toxicology report to substantiate her claim that she was drugged.  Instead, she was communicating lucidly, talking on the phone, and sending and responding to texts with Mr. Rose until 2:09 a.m. and again at 7:49 a.m. and then she went to work for a full day.  She did not even designate an affirmative expert to opine on this topic.  All evidence shows Jane Doe falsely asserted a date rape drug claim.

(3)   Ms. Doe did not undergo a medical examination or rape kit test.  She did not get tested for pregnancy or sexually transmitted diseases.  There are no documented injuries and no forensic evidence substantiating her rape claim.  Instead, she woke up, texted Mr. Rose at 7:49 a.m. that she was hungover and wanted reimbursement for the sex belt (that she brought with her and claimed falsely to have purchased), was "happy" and "smiling" as she interacted normally

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

with her roommate with no mention of any rape, then went to work for a full day, where she discussed the sex belt with her co-worker Keyana LaVergne, again with no mention of any rape.  She did not tell her parents or family about the alleged rape or about this lawsuit (instead telling them falsely that the lawsuit involved a car accident).

(4)    Ms. Doe identified Dr. Reuben Vaisman-Tzachor as the treating physician regarding her emotional distress damages.  However, she did not designate him as an expert and he will not be testifying at trial.  ECF # 170 (July 27, 2016 order excluding Dr. Vaisman-Tzachor's opinions and testimony and any opinions formed by Ms. Doe's other experts on the basis of Dr. Vaisman-Tzachor's report).  Ms. Doe has no contemporaneous mental examination evidence to support her emotional distress claims.  Instead, photographs posted on social media show Ms. Doe was partying in Las Vegas two weeks after she claims she was raped.  Ms. Doe first met Dr. Konstat, her emotional distress expert, in late May 2016 – nearly three years after the alleged rape and at the expert discovery deadline.

(5)    Ms. Doe's contemporaneous texts reveal that she continued communicating with Mr. Rose and Mr. Allen after the alleged rape with no mention of any rape.

(6)    Two years later, in August 26, 2015, Ms. Doe filed this lawsuit.  By this time, she has been evicted, she is unemployed, she is struggling to pay her rent and bills, she is repeatedly locking herself out of her apartment, she is exploring cosmetic surgery procedures.  And 11 months of texts with her roommate Keyana LaVergne do not once mention rape or emotional distress, but discuss a lot of partying, attending celebrity events, studying Karrueche Tran's Oprah interview, and getting drunk and high.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

**B.** **Ms. Doe's Contemporaneous Text Exchanges with Mr. Rose Demonstrate Consent.**

On June 20, 2013, Ms. Doe sends two photos to Mr. Rose that are sexual in nature, including a naked woman wearing a sex belt: "One picture was of myself wearing a [sex] belt an at event, and then another picture was one that I got from online of a [naked] young lady wearing a [sex] belt . . . on her waist, and she was undressed on her bed." Doe 6/14/16 Tr. 475:20-477:6.  She also sends sexually explicit texts to Mr. Rose:

- 6/20/2013 01:07:45 PM Plaintiff to Mr. Rose: "**Dam babe U making you pussy wet**"
- 6/20/2013 01:24:35 PM Plaintiff to Mr. Rose: "**I'm about to take a cold ass shower with my vibrator smdh**"
- 6/20/2013 01:40:56 PM Plaintiff to Mr. Rose: "What's your email. . I'ma try from my mac my phone videos don't go through . .**bay u now u the only one than can make her cum and drip and cum again**"

By July 23, 2013, Mr. Rose has decided to stop seeing Jane Doe:

- 7/23/2013 08:36:10 PM Mr. Rose to Plaintiff: "We good but I'm not messing wit u like that anymore.
- 7/23/2013 08:48:51 PM Mr. Rose to Plaintiff: "It's no hate wit u at all.  U got mad at me for askin a question"
- 7/23/2013 09:18:56 PM Mr. Rose to Plaintiff: "All I can do is ask.  It was nice meeting u and I wish u nothing but the best"

Ms. Doe confirms she understood that Mr. Rose was terminating their sexual relationship at that time:

Q. And [Mr. Rose] then makes clear he's ending the relationship by simply clarifying that all he can do is ask a question.  It was nice meeting you, and he wishes you nothing but the best.

A. Correct.

Q. And you understood that he was once again clarifying to you that, as far as he was concerned, any intimate relationship was over?

A. Correct.

Doe 6/14/16 Tr at 502:1-10.

On July 23, 2013, after Ms. Doe knows that Mr. Rose has decided to stop communicating with her, Ms. Doe sends texts to Mr. Rose offering to "b less selfish with my pussy next time."

- 7/23/2013 09:00:55 PM Plaintiff to Mr. Rose: "U blame me, **I was horny as hell, couldn't wait to get my dick** and u tell me to 2 give my pussy to somebody else."

- 7/23/2013 09:23:20 PM Plaintiff to Mr. Rose: "If my flaw is wanting and waiting and keeping my pussy for you, then my bad.    I can share u with howeva many bitches but shit I had never messed or fucked with more than 1 @ a time so my bad for that too.   U did give me some good dick so thanks and I guess **I have to b less selfish with my pussy next time**."

Rose Trial Ex. 1.

Then there is no communication between Jane Doe and Mr. Rose for two weeks until Ms. Doe initiates correspondence with Mr. Rose again.  Doe 6/14/16 Tr. 636:4-20.  Jane Doe's first text to Mr. Rose on Monday, August 26, 2013 (approximately 17 hours before the alleged rape) states:

- 8/26/2013 10:12:58 AM Plaintiff to Mr. Rose: "**U the reason why I wake up horny**"

Then Jane Doe proceeds to ask Mr. Rose for alcohol, marijuana, and ecstasy:

- 8/26/2013 10:38:23 AM Plaintiff to Mr. Rose: "**Bet what drink u got there**"

- 8/26/2013 08:04:37 PM Plaintiff to Mr. Rose: "**Do u want weed?**" 8/26/2013 09:11:07 PM Plaintiff to Mr. Rose: "**U got e babe** she wants some we just left the sex store."

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

- "Q. Are you referring to Ecstasy? A. Yes, correct."  Doe 6/14/16 Tr. 533:24-2.

It is undisputed that on the day she claims she was raped, Jane Doe discusses going to the "girls on girls" sex store to purchase a sex belt, which she brings with her to Mr. Rose's Beverly Hills rental home and then complains about leaving behind in his bathroom.  She also agrees to bring a "chick" who is a "massage therapist in the valley" in response to Mr. Rose's request that Ms. Doe "surprise" him with another woman.  Doe 6/14/16 Tr. 527:22-528:3.

- 8/26/2013 12:00:33 PM Plaintiff to Mr. Rose: "**Babe I need that pink belt I sent you the picture off and I have a chick** she a massage therapist in the valley can u send a driver to pick me and then ill go get her from work.  I told her I would take care of her"

- 8/26/2013 12:18:15 PM Plaintiff to Mr. Rose: "**Ima have him take us to the girls on girls store and grab the belt** u want anything else from there."

- 8/26/2013 09:11:07 PM Plaintiff to Mr. Rose: "U got e babe she wants some **we just left the sex store**."

- "**I wanted him to want the belt.  I already had the belt, and I wanted to give him the belt**."  Doe 6/14/16 Tr. 605:7-9.

Jane Doe asks Mr. Rose to come to her apartment five times in the early morning of August 27, 2013 (an hour before she claims she was raped):

- 8/27/2013 01:40:32 AM Plaintiff to Mr. Rose: "No she was not anyways fuck the bitch . . I left my belt and my shit n yo bathroom.and **u need to come to me right now**."

- 8/27/2013 01:46:19 AM Plaintiff to Mr. Rose: "**Come with him babe**"

- 8/27/2013 01:55:00 AM Plaintiff to Mr. Rose: "**I need u to come with him**"

- 8/27/2013 01:56:45 AM Plaintiff to Mr. Rose: "**So I want you here too**"

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

- 8/27/2013 02:03:27 AM Plaintiff to Mr. Rose: "I know he Will, **I want u here too**"

Mr. Rose and Mr. Allen send texts announcing their arrival at Ms. Doe's apartment, and Mr. Allen calls Ms. Doe five times in a four-minute span to announce their arrival, the final two calls lasting two minutes each.  Rose Trial Ex. 6.  Mr. Rose, Mr. Allen, and Mr. Hampton will testify at trial that Ms. Doe came to the door and escorted them inside her apartment complex door (which was locked and locks automatically), her apartment door (which was locked), and her bedroom. Ms. Doe does not deny letting Mr. Rose, Mr. Hampton, and Mr. Allen inside; she testified that she does not recall how they got inside.  Doe 6/14/16 Tr. 557:24-559:4. They engaged in consensual sex.  Mr. Rose was not present and does not know what transpired between Jane Doe and Mr. Allen or Jane Doe and Mr. Hampton inside Ms. Doe's bedroom.

At 7:49 a.m., Jane Doe texts Mr. Rose and mentions only that she has a hangover and Mr. Rose never paid her for the sex belt or cab fare.

- 8/27/2013 07:49:38 AM Plaintiff to Mr. Rose: "Im hangover, didn't make it to work, and kendra is blowing my phone up.   U never payed me back or even payed for Kendras Taxi."  Rose Trial Ex. 2.

Ms. Doe sends 20 texts to Mr. Rose following the alleged rape from August 27, 2013 through September 3, 2013.  Rose Trial Exs. 2 & 3.  She is frustrated that she has not been reimbursed $269 for the cab fare and sex belt (even though Mr. Allen had paid for the cab and given Ms. Doe money and Ms. Doe lied about buying the sex belt).  Ms. Doe is upset that Mr. Rose stops responding to her.  Ms. Doe admits using money as a way to get Mr. Rose's attention.

> [T]he only way he would respond to me is when I asked him about money. . . . So I just, like, went back to asking about the money because that's the only thing he would respond to. . . And I had to go and talk about this, which

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

– the money.  But it was never about the money, I just wanted to talk to him.

Doe 6/14/16 Tr. 586:25-587:12; *see also id.* 666:25-667:1.

### C.   Ms. Doe Consented to Sexual Intercourse with Mr. Rose for 20 Months, Including the Early Morning of August 27, 2013, when Ms. Doe was Fully Capable of Providing Consent.

The undisputed evidence will show that the sexual intercourse that evening was consensual.  While Ms. Doe claims to have been intoxicated during the night of August 26-27, 2013, Mr. Rose, Mr. Allen, and Mr. Hampton reasonably believed that she was not intoxicated.  Ms. Doe engaged in sexual activity with Mr. Rose earlier that evening at his rented Beverly Hills home (where Ms. Doe does not claim she was raped), texted Mr. Rose and repeatedly invited him to her apartment to have sex, let him into the building and into her apartment and into her bedroom, and never asked him to stop having sexual intercourse with her.

Mr. Rose does not know what sexual activity occurred between Ms. Doe and Mr. Hampton or Ms. Doe and Mr. Allen in Ms. Doe's apartment.  Mr. Rose was not present in Ms. Doe's apartment bedroom at the time when Mr. Allen or Mr. Hampton were.  Claudia Carleo, Ms. Doe's roommate at the time, corroborates these facts.

The key evidence that Ms. Doe consented to sexual intercourse with Mr. Rose for 20 months, including the early morning of August 27, 2013, when Ms. Doe was fully capable of providing consent includes the following:

(1)     "It is undisputed that [Mr. Rose] and Plaintiff had been dating for some twenty months at the time of the incident, and had engaged in intercourse on many occasions."  ECF # 169 at 5.  At trial, Mr. Rose will show that all sexual contact between himself and Plaintiff was consensual.  And Plaintiff was sexually adventurous with him, including Ms. Doe bringing her friend Gabriela Chavez with her to Chicago in May 2013 to engage in consensual sexual activity with her and Mr. Rose and Ms. Chavez.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

(2)   Plaintiff initiated consensual sexual interaction with Mr. Rose and Mr. Allen and Mr. Hampton at the Beverly Hills house and repeatedly invited Mr. Rose, Mr. Allen, and Mr. Hampton to her apartment to have consensual intercourse.

- Mr. Allen testified that Plaintiff gave him a lap dance "with her dress raised" on August 26, 2013 at the Beverly Hills rental residence.  "Her dress came up" and "she didn't seem bothered by her dress being up."  Allen Tr. at 52:1-12.  Plaintiff was wearing a "long black dress and her dress rose up" and "she danced on me."  Allen Tr. at 11-20.  "And she tried to get me to take my clothes off before I got in the pool, but I told her no."  Mr. Allen further testified that he and Plaintiff went into a room and "[w]e kissed, we kissed, we made out."

- Mr. Hampton testified:  "I think it was Jane Doe's idea" to have sex.  Plaintiff also gave Mr. Hampton a lap dance and "after she gave me a lap dance, she gave Ryan a lap dance."  Hampton Tr. at 46:13-47:5.  Mr. Hampton further testified that he saw Mr. Rose and Plaintiff having sex at the Beverly Hills rental residence on the evening of August 26, 2013.  Mr. Hampton and Plaintiff also had sex at the Beverly Hills residence and Plaintiff initiated it.  Hampton Tr. at 48:22-51:23, 52:18-53:1 ("she came on to me").

(3)   Ms. Doe's text messages show that she repeatedly invited Mr. Rose to her apartment.  After he arrived, Plaintiff opened three doors (to the apartment complex, the front door of her apartment, and the door to her bedroom) and voluntarily had sex with Mr. Rose, Mr. Allen, and Mr. Hampton in her bedroom.

- 8/27/2013 01:40:32 AM Plaintiff to Mr. Rose: "No she was not anyways fuck the bitch . . I left my belt and my shit n yo bathroom.and u need to come to me right now."

- 8/27/2013 01:46:19 AM Plaintiff to Mr. Rose: "Come with him babe"

- 8/27/2013 01:55:00 AM Plaintiff to Mr. Rose: "I need u to come with him"

- 8/27/2013 01:56:45 AM Plaintiff to Mr. Rose: "So I want you here too"

- 8/27/2013 02:03:27 AM Plaintiff to Mr. Rose: "I know he Will, I want u here

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

1    too"

2        (4)    Plaintiff did not mention the alleged rape to Mr. Rose in any of the

3    communications with him the morning of August 27, 2013 or several days thereafter.

4        (5)    Plaintiff did not mention the alleged rape to her roommate, Claudia Carleo,

5    in her interaction with her the morning of August 27, 2013 before Plaintiff went to

6    work for a full day.

7        (6)    Claudia Carleo, Plaintiff's roommate at the time of the incident, testified

8    that Ms. Carleo heard no "noises" or "screaming" or anyone yelling "don't" or "stop"

9    in the apartment in the early morning of August 27, 2013.  Ms. Carleo testified that she

10   greeted Plaintiff's "company" in the apartment and was not nervous or scared.  Ms.

11   Carleo testified that she interacted with Plaintiff on the morning of August 27, 2013;

12   Plaintiff was "happy and smiling" and acted normal before Plaintiff left for work,

13   where Plaintiff worked a full day.  Ms. Carleo further testified that Ms. Carleo saw no

14   damage on August 27, 2013 to the apartment complex door (which automatically

15   locked and was locked on August 27, 2013) or to Plaintiff's apartment door (which was

16   locked on August 27, 2013); and that residents had to walk down the hallway and

17   physically let visitors in.

18       (7)    Text messages exchanged between Plaintiff and Mr. Rose between June

19   and September 2013 demonstrate that Plaintiff was sexually adventurous with Mr.

20   Rose, that she volunteered to bring a sex belt to have fun with Mr. Rose when she

21   visited the Beverly Hills residence on August 26, 2013, that Plaintiff asked Mr. Rose

22   for drugs (which he declined) and alcohol, and that Plaintiff repeatedly asked Mr. Rose

23   to drive over to Plaintiff's apartment after 1 a.m. for more consensual sexual

24   interaction.  Plaintiff also withheld texts showing that after she woke up the morning of

25   August 27, 2013, she texted Mr. Rose at 7:49 a.m. asking him for reimbursement for

26   her cab fare and the sex toy she claimed to have purchased (plaintiff admits she lied

27   about paying for the sex belt), and mentioned only that she had a hangover and had to

28   get to work.

- 8/26/2013 12:00:33 PM Plaintiff to Mr. Rose: "Babe I need that pink belt I sent you the picture off and I have a chick she a massage therapist in the valley can u send a driver to pick me and then ill go get her from work. I told her I would take care of her."
- 8/26/2013 12:18:15 PM Plaintiff to Mr. Rose: "[address omitted] Ima have him take us to the girls on girls store and grab the belt u want anything else from there."
- Plaintiff texted pictures of herself wearing a sex belt along with a picture of the sex belt to Mr. Rose.

Rose Trial Ex. 2.

(8)    Plaintiff described the events of the night in dispute to a former colleague and roommate the day after they occurred, without mentioning anything about any rape or sexual assault. Ms. LaVergne reported that Plaintiff arrived at work on time the next day, around 9 a.m., acted normal, and didn't seem angry, didn't show any emotion, and didn't mention that she had been raped.

(9)    Plaintiff's friend Gabriela Chavez will testify about partying with Plaintiff in Las Vegas in mid-September 2013–approximately two weeks after the alleged incident. Ms. Chavez has photographs of Plaintiff on social media partying in September and October 2013.

(10)   Plaintiff   was   fired   from   her   job,   unemployed,   evicted (LAVERGNE__00392), struggling to pay her bills, inquiring about cosmetic surgery procedures, and very interested in celebrities, selfies, social media, and celebrity parties and clubs.

- Text from Plaintiff to Ms. LaVergne February 27, 2015 at 3:47 p.m.: "Omg I'm at the government building applying for food stamps and there's some football players here from school embarrassing" (LAVERGNE__000229).
- Text from Plaintiff to Ms. LaVerge March 21, 2015: "So wht does she look like and if u get surgery then I'll get it too goin to Mexico for cellulaze

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

1    consultation and it's only 1 hour 3" (LAVERGNE__000293).

2    • Text from Plaintiff to Ms. LaVerge March 28, 2015: "It's up to you this

3    would not be an issue if I was not in school and unemployed."

4    (11)   Plaintiff admitted that she was looking for a "very wealthy good man

5    should we go find one" (LAVERGNE__000004) and "since we finally filed against

6    derrick we soon will returning his tv and ill get us a Plasma (LAVERGNE__000083).

7    (12)   Plaintiff is an unreliable witness as to the events of August 26-27, 2013, as

8    she testified that her memory of August 26-27, 2013 is vague and that she does not

9    remember portions of the night.  She has admitted to lying repeatedly in this case.

10    To the extent Plaintiff contends that her alleged intoxication vitiates consent, that

11   argument fails.  Plaintiff has no proof that she was intoxicated on the night in question.

12   She did not get a blood test to support her claim.  Mr. Rose, Mr. Allen, and Mr.

13   Hampton observed Plaintiff acting normally and reasonably did not believe she was

14   intoxicated.  She only consumed one or two drinks in their presence.  The key evidence

15   showing that Plaintiff was not incapacitated such that she would have been unable to

16   provide consent is:

17    (1)    Ms. Doe drank only a small amount of tequila at Mr. Rose's Beverly Hills

18   rental house several hours before the sexual intercourse and did not seem intoxicated.

19   Her speech was not slurred, she was walking and communicating normally.  Mr. Rose

20   reasonably believed that Ms. Doe was not intoxicated.

21    • Mr. Allen testified that Plaintiff "didn't seem drunk to me."  Allen Tr. at 54:24.

22    Mr. Allen also testified that Plaintiff poured the shots and everyone shared a

23    "small bottle" that they did not finish "[s]o it wasn't many shots poured."  Allen

24    Tr. at 55:2-24.

25    • Mr. Hampton testified that Plaintiff "poured everything" that they drank and that

26    he believed Plaintiff only drank two shots of tequila the entire night.

27    Q.    Okay, now, you believe plaintiff only drank two shots of tequila the entire

28    night?

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

1     A.    Yes.

2     Q.    Did she at any time during the night seem incapacitated to you?

3     A.    No.

4     Q.    At any time during the night did she seem highly intoxicated?

5     A.    No.

6     (2)    Plaintiff was lucidly communicating with Mr. Rose and Mr. Allen through text messages and telephone calls an hour before the alleged incident.  Plaintiff was not so intoxicated that she could not consent to intercourse.

(3)    It is undisputed that there is no evidence of any drug use on the evening August 26-27, 2013.  There is no evidence that Mr. Rose, Mr. Allen, or Mr. Hampton provided any drug to Plaintiff.  Mr. Rose had no reason to believe that Plaintiff had ingested any drug.  Plaintiff's own expert, Mr. Okorocha, concedes this fact:  "There is NO EVIDENCE of drug use other than alcohol."  ECF # 163-3 at 25.  Plaintiff's counsel also concedes this fact:  "In this case, no drug or alcohol testing was administered to the Plaintiff at that time; there is no evidence or testimony by the parties or witnesses that they either administered drugs to Plaintiff or observed anyone else giving the Plaintiff drugs."  ECF # 166 at 4.

(4)    Plaintiff is a party girl with an active social life.  Her text messages with friends often refer to her being drunk and high.  The record includes many photographs of her social life on social media.  Indeed, August 26, 2013 was a Monday, and at 10:38 a.m., Plaintiff is asking Mr. Rose about alcohol.  Later that day she asks Mr. Rose about marijuana and ecstasy.  Mr. Hampton testified that "one of the first things she said when she walked in [to the Beverly Hill rental residence] was, do you guys have Ecstasy and we said no."  Hampton Tr. at 57:19-21.

- 8/26/2013 10:38:23 AM Plaintiff to Mr. Rose: "Bet what drink u got there"

- 8/26/2013 08:04:37 PM Plaintiff to Mr. Rose: "Do u want weed?"

- 8/26/2013 08:41:18 PM Plaintiff to Mr. Rose: "I'm finally in the car.   He felt so bad about the confussion at least he has some drank lol"

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

- 8/26/2013 08:58:50 PM Mr. Rose to Plaintiff: "Naw I dont"
- 8/26/2013 09:11:07 PM Plaintiff to Mr. Rose: "U got e babe she wants some we just left the sex store."

Rose Trial Ex. 2.

## D. Ms. Doe Repeatedly Invited Mr. Rose to Her Apartment on the Early Morning of August 27, 2013 and Opened Three Doors to Greet Her Guests.

As evidenced by the text messages Plaintiff sent to Mr. Rose during the early morning hours of August 27, 2013, Plaintiff invited Mr. Rose to her apartment during the early morning hours of August 27, 2013, repeatedly imploring him to come to her residence.  Plaintiff opened the door to the building, apartment, and bedroom, and walked Mr. Rose and his friends, Mr. Hampton and Mr. Allen, to her apartment and invited them into her bedroom.

The key evidence showing that Plaintiff cannot sustain her burden of proof on the third element of trespass—"that Plaintiff did not give permission for the entry"— includes the following:

(1)    Mr. Rose, Mr. Allen, and Mr. Hampton (all of whom had never before been to Ms. Doe's apartment) testified that Plaintiff opened the door to invite her guests inside the complex, the apartment, and her bedroom.

(2)    Claudia Carleo testified that she saw no damage on August 27, 2013 to the apartment complex door (which automatically locked and was locked on August 27, 2013) or to Plaintiff's apartment door (which was locked on August 27, 2013); and that residents had to walk down the hallway and physically let visitors in.  Claudia Carleo was home in the early morning of August 27, 2013 and was not scared or nervous by the presence of Mr. Rose, Mr. Allen, and Mr. Hampton in her apartment; she exchanged pleasantries with them.

(3)    The (a) many text messages between Mr. Rose and Plaintiff,  (b) text messages exchanged between Mr. Allen and Plaintiff, and (c) Mr. Allen's telephone

**DEFENDANT DERRICK ROSE'S TRIAL BRIEF**

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

1    call records in the early morning of August 27, 2013 are inconsistent with Plaintiff's

2    claim that Mr. Rose (or Mr. Allen or Mr. Hampton) broke into her apartment.

3    Trespassers do not repeatedly call and text to announce their arrival.  The final 2 call

4    records from Mr. Allen to Plaintiff are for 2 minutes, suggesting that Plaintiff answered

5    and communicated with Mr. Allen.  This is consistent with Mr. Allen's testimony:  "I

6    believe we called [Plaintiff] to let her know we was there."  Allen Tr. at 44:12-13.  "She

7    didn't answer a few times, and as we walked away - - I don't remember if she called

8    somebody or she came to the door"  *Id*. at 44:23-45:2.

9        A      She answered the phone and she let us in.

10       Q      Okay.  So did she come to the front door?

11       A      She did.

12       Q      She came to the front door and let you in?

13       A      Yeah.

14       Q      Okay.  So you said you walked up the front staircase and she came to the

15   front door and let you in?

16       A      Yes.  We called.

17       Q      Okay.

18       A.     She didn't answer.  We called again and she didn't answer.  We were

19   about to leave, and as we walked away she answered or called or one.  One of the two.

20   I don't remember exactly what happened, but I know as we walked away she answered.

21       Q      Okay.  And came to the front door and let you in?

22       A      Yeah.

23   Allen Tr. at 45:5-22.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

25

**DEFENDANT DERRICK ROSE'S TRIAL BRIEF**

**E.**     **Mr. Rose Did Not "Intend" to Cause Emotional Distress to Ms. Doe, Ms. Doe Did Not Suffer "Severe" Emotional Distress, and Mr. Rose's Conduct was Not a "Substantial Factor" in Causing Ms. Doe's Alleged Severe Emotional Distress.**

In addition to the evidence cited in connection with the sexual battery and battery claims, the key evidence that Mr. Rose did not "intend" to cause Ms. Doe emotional distress includes:

(1)     Ms. Doe texted Mr. Rose at 7:49 a.m. when she awoke the morning of the August 27, 2013 with no mention of an alleged rape.

(2)     Ms. Doe sent 20 text messages to Mr. Rose after August 27, 2013 with no mention of an alleged rape.

(3)     Plaintiff did not mention the alleged rape to Mr. Rose in any of the communications with him the morning of August 27, 2013.

(4)     Mr. Rose offered to reimburse Plaintiff for the cab fare and the sex belt that Plaintiff brought to the Beverly Hills residence, which Plaintiff claimed falsely to have purchased.

The key evidence that Ms. Doe did not suffer "severe" emotional distress and that Mr. Rose's conduct was not a "substantial factor" in causing any includes:

(1)     The testimony and reports of Dr. Jones.

(2)     The independent mental examination of Plaintiff.

(3)     Plaintiff did not mention the alleged rape to Mr. Rose in any of the communications with Mr. Rose the morning of August 27, 2013. Plaintiff complained that she needed to be reimbursed for cab fare and the sex belt that Plaintiff brought to the Beverly Hills residence, which Plaintiff claimed falsely to have purchased.

(4)     Plaintiff did not mention the alleged rape to her roommate Claudia Carleo in her interaction with her the morning of August 27, 2013.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

(5)     Claudia Carleo, Plaintiff's roommate at the time of the incident, testified that she interacted with Plaintiff on the morning of August 27, 2013; Plaintiff was "happy and smiling" before Plaintiff left for work, where Plaintiff worked a full day.

(6)     Plaintiff's friend, Gabriela Chavez, will testify about partying with Plaintiff in Las Vegas in mid-September 2013–approximately two weeks after the alleged incident.  Ms. Chavez has photographs of Plaintiff on social media partying in September and October 2013.

## V.     EVIDENTIARY ISSUES

The substance of testimony in Plaintiff's witness lists includes inadmissible hearsay, which should be excluded.   Plaintiff's non-percipient witnesses are not allowed to testify as to details of the sexual of the assault as subsequently and self-servingly told to them by Ms. Doe.

Plaintiff continues to rely on the unsubstantiated theory that Ms. Doe thinks she may have been drugged.  The Court ruled that Ms. Doe may testify about "her own experiences and feelings" the morning of August 27, 2013 but she "may not testify about technical or scientific reasons to believe she may have been drugged."  ECF # 265 at 8.  Further, Ms. Doe failed to designate an affirmative expert on this topic; her rebuttal expert, Mr. Okorocha, may not testify beyond the scope of Dr. Lykissa's testimony, which is very narrow: Plaintiff was not administered Rohypnol on August 26-27, 2013.  ECF # 216 at 3.

Finally, Plaintiff's credibility and financial motivation and alleged emotional distress claims for $21.5 million in damages are critical aspects to this case.  Plaintiff herself injected her "traditional, religious" upbringing and sexual mores into the case as part of her emotional distress claims for millions of damages.  If Ms. Doe opens the door by voluntarily placing these topics at issue at trial, Mr. Rose will challenge Plaintiff's contentions on these issues.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

## VI.   ISSUES OF LAW

Plaintiff bears the burden of proving that she did not consent to sexual intercourse – despite 20 months of prior consensual sexual activity – or that she lacked capacity to consent to sexual intercourse, and that Mr. Rose knew or should have known that Plaintiff lacked capacity to consent to sexual intercourse.  Plaintiff also bears the burden of proving that she did not grant Mr. Rose permission to enter her bedroom, despite her repeated demands that he come to her apartment in the early morning hours of August 27, 2013.

It is important to ensure that the jury understands that Plaintiff bears the burden of proving her claims as to each Defendant.  Ms. Doe has the burden to prove a lack of consent (to entry to her apartment and to sex).[9]

## VII.   PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES FROM MR. ROSE

Ms. Doe cannot satisfy her burden to prove her claims against Mr. Rose, and liability and damages should be denied.  Mr. Rose did not act with malice, oppression, or fraud.  Mr. Rose had consensual sexual relations with Ms. Doe for 20 months, including the early morning of August 27, 2013, after she repeatedly invited him to her apartment to have sex with her.  Mr. Rose did not act with conscious disregard for Plaintiff's rights.  As contemporaneous text messages reveal, Mr. Rose and Plaintiff had consensual sex at her apartment during the early morning hours of August 27, 2013.  This consensual sex followed 20 months of consensual sex.  As a result, Mr.

---

[9] The central issue is "whether Plaintiff consented to sexual intercourse with Defendants in early morning of August 27, 2013." ECF # 169 at 1.  "At the heart of this action are two related questions:  Whether Plaintiff consented to sexual intercourse with Defendants in the early morning of August 27, 2013, and if she did not, whether Defendants reasonably believed that she did." ECF # 169 at 5.  As the Court noted, "Defendants' version of transpired events could well convince a reasonable jury to answer both questions in Defendants' favor." ECF # 169 at 5. "This narrative may be particularly convincing as to Defendant Rose." ECF #169 at 5.

**DEFENDANT DERRICK ROSE'S TRIAL BRIEF**

Rose did not act with malice, oppression, or fraud in having consensual sexual relations with Ms. Doe.

If the jury decides that the conduct of Mr. Rose, Mr. Allen, or Mr. Hampton caused Ms. Doe harm, the jury will decide whether that conduct justifies an award of punitive damages.  During the first phase of the bifurcated trial, the jury will decide whether Plaintiff has proved by clear and convincing evidence that a Defendant engaged in that conduct with malice, oppression, or fraud.  The amount of punitive damages, if any, will be decided later.  During the first phase of the trial, Ms. Doe is not entitled to introduce evidence of Mr. Rose's wealth.

At the September 20, 2016 Pretrial Conference, the Court asked the parties to be prepared to immediately move to the second phase of the trial with a showing or Mr. Rose's net worth if the jury decides that punitive damages should be awarded.

## VIII.          CONCLUSION

This case presents a relatively simple set of facts and legal issues.  The evidence will show that Ms. Doe invited Mr. Rose, Mr. Allen, and Mr. Hampton to her apartment in the early morning of August 27, 2013 (providing them with her address) and that she escorted them inside her apartment building, her apartment, and her bedroom.  The evidence will also show that Ms. Doe consented to the sexual encounter with Mr. Rose at her apartment, just as she had always consented to sexual activity with Mr. Rose over the past 20 months.  Mr. Rose reasonably believed Ms. Doe consented to the sexual activity, and that she was fully capable of providing consent.  While at Ms. Doe's apartment in the early morning hours of August 27, 2013, Mr. Rose, Mr. Allen, and Mr. Hampton interacted with Ms. Doe's roommate Claudia Carleo, who noticed no unusual activity.

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

**DEFENDANT DERRICK ROSE'S TRIAL BRIEF**

1   DATED:  September 27, 2016          **BAUTE CROCHETIERE & GILFORD LLP**

2

3                                                By:   /s/ Mark D. Baute
                                                         _____
                                                        MARK D. BAUTE
4                                                       COURTNEY A. PALKO
                                                        Attorneys for Defendant
5                                                       DERRICK ROSE. an individual

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

**JANE DOE v. DERRICK ROSE, et al.**

[USDC Central District Case No. CV 15-7503-MWF(JCx)] [2235.1]

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 777 South Figueroa Street, Suite 4900, Los Angeles, CA 90017.

On the date indicated below, I served true copies of the following document(s): **DEFENDANT DERRICK ROSE'S TRIAL BRIEF** described as on the interested parties in this action as follows:

**(\*\*SEE ATTACHED SERVICE LIST\*\*)**

☒      **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 27, 2016, at Los Angeles, California.

/s/ Courtney A. Palko
COURTNEY A. PALKO

BAUTE CROCHETIERE & GILFORD LLP
777 South Figueroa Street, Suite 4900
Los Angeles, CA 90017
Tel (213) 630-5000 • Fax (213) 683-1225

# SERVICE LIST

**JANE DOE v. DERRICK ROSE, et al.**

USDC Central District Case No. CV 15-7503-MWF (JCx) [2235.1]

| | |
|---|---|
| Brandon J. Anand, Esq.<br>ANAND LAW, PC<br>5455 Wilshire Blvd., Suite 1812<br>Los Angeles, CA 90036<br>Telephone: (323) 325-3389<br>Fax: (323) 488-9659<br>E-mail: brandon@anandlaw.com;<br>info@anandlaw.com | *Attorneys for Plaintiff*<br>*JANE DOE* |
| Waukeen Q. McCoy, Esq.<br>McCOY LAW FIRM P.C.<br>555 Montgomery Street, Suite 1100<br>San Francisco, CA 94111<br>Telephone: (415) 675-7705<br>Fax: (415) 675-2530<br>E-mail: mail@mccoyslaw.com | *Attorneys for Plaintiff*<br>*JANE DOE* |
| Thaddeus J. Culpepper, Esq.<br>CULPEPPER LAW GROUP<br>3818 Crenshaw Blvd., Suite 905<br>Los Angeles, CA 90008<br>Telephone: (310) 997-0806<br>E-mail: culpepper@alumni.pitt.edu | *Attorneys for Plaintiff*<br>*JANE DOE* |
| Patrick M. Maloney, Esq.<br>THE MALONEY FIRM, APC<br>2381 Rosecrans Avenue, Suite 405<br>El Segundo, California 90245<br>Telephone: (310) 540-1505<br>Fax: (310) 540-1507<br>E-mail: pmaloney@maloneyfirm.com | *Attorneys for Defendants*<br>*RANDALL HAMPTON and RYAN*<br>*ALLEN* |
| Michael D. Monico, Esq.<br>Barry A. Spevack, Esq.<br>MONICO & SPEVACK<br>20 S. Clark Street, Suite 700<br>Chicago, IL 60603<br>Telephone: (312) 782-8500<br>Fax: (312) 759-2000<br>E-mail: mm@monicolaw.com | *Attorneys for Defendants*<br>*RANDALL HAMPTON and RYAN*<br>*ALLEN* |

BAUTE CROCHETIERE & GILFORD LLP<br>777 South Figueroa Street, Suite 4900<br>Los Angeles, CA 90017<br>Tel (213) 630-5000 • Fax (213) 683-1225