UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV-15-07503-MWF-JCx | Date: September 30, 2016 |
| Title: Jane Doe v. Derrick Rose, et al. | |

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:  Court Reporter:
Rita Sanchez  Not Reported

Attorneys Present for Plaintiff:  Attorneys Present for Defendant:
None Present  None Present

**Proceedings (In Chambers):** ORDER GRANTING DEFENDANT DERRICK ROSE'S MOTION FOR A LIMITED RESTRAINING ORDER [269]

Before the Court is Defendant Derrick Rose's Motion for a Limited Restraining Order Restricting the Parties and Counsel from Speaking with the Press until the End of Trial ("the Motion") (Docket No. 269), filed on September 22, 2016. Plaintiff Jane Doe filed an Opposition (Docket No. 286) on September 28, 2016. The Court has reviewed and considered the papers on the motion and held a hearing on **September 29, 2016.**

Defendant Rose's Motion is **GRANTED.** The recent flurry of publicity this case has received threatens to create a "circus-like environment" that would deprive both Plaintiff and Defendants of their rights to a fair trial. *Levine v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 764 F.2d 590, 598 (1985). Should counsel for either side continue to discuss matters with the press, their actions would pose a clear and present danger to the parties' Seventh Amendment rights. Other, less restrictive alternatives to a limited restraining order appear likely to be ineffective. The Court therefore has endeavored to draw a narrow, minimally restrictive order that balances the parties and counsel's First Amendment rights with the competing Seventh Amendment right to a jury trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-07503-MWF-JCx                    Date:  September 30, 2016
Title:       Jane Doe v. Derrick Rose, et al.

## I.  BACKGROUND

In September 2015, Plaintiff Jane Doe filed a complaint in California Superior Court alleging that Defendants Derrick Rose, Randall Hampton, and Ryan Allen engaged in sexual intercourse with her without her consent, giving rise to various claims under California law, including sexual battery.  (Docket No. 1 ¶ 1).  The parties and the Court have referenced this alleged act as a "rape", although that term is used in California law for a particular crime.  Plaintiff alleges that, as a result of the sexual battery, she has suffered severe emotional distress, humiliation, embarrassment, and anxiety.  (Id. ¶ 59).  On June 17, 2016, the Court permitted Plaintiff to proceed under a pseudonym for all pretrial proceedings.  (Docket No. 99 at 6).  On September 22, 2016, the Court held that Plaintiff would not be permitted to proceed under a pseudonym at trial.  (Docket No. 264).  Plaintiff has filed a motion asking the Court to reconsider its September 22, 2016 holding.  (Docket No. 276).  The Court will rule on that motion in a separate Order.

As trial approaches, both Plaintiff and Defendant Rose have made a number of statements to the press regarding this action.  (*See, e.g.*, Declaration of Mark Baute re Plaintiff's Extensive Pretrial Media Interviews ("Baute Decl.") (Docket No. 250-1); Ian Begley, *L.A. Police Investigating Complaint Against Knicks Guard Derrick Rose*, ESPN (Sept. 26, 2016), http://www.espn.com/nba/story/_/id/17643149/los-angeles-police-investigate-complaint-knicks-guard-derrick-rose;  Greg Hanlon, *Woman Who Accused NBA Star Derrick Rose of Gang Rape Must Reveal Her Name During Civil Trial: Reports*, PEOPLE (Sept. 22, 2016, 2:30 PM), http://www.people.com/article/derrick-rose-accuser-real-name-gang-rape-trial-judge; Diana Moskovitz, *Here Are the Details from the Derrick Rose Rape Lawsuit [UPDATED]*, DEADSPIN (Aug. 27, 2015, 6:08 PM), http://deadspin.com/here-are-the-details-from-the-derrick-rose-rape-lawsuit-1726964421).

The Court takes judicial notice of publications "introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d

---

**CIVIL MINUTES—GENERAL**                                                                 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV-15-07503-MWF-JCx | Date: September 30, 2016 |
| Title: Jane Doe v. Derrick Rose, et al. | |

396, 401 n. 15 (3d Cir. 2006))). In the above-cited articles, and in many others, the attorneys for both parties have made statements to the press regarding their settlement strategy and their assessment of the merits of the case.

Both parties have discussed with the press evidence that has already been ruled, or may yet be ruled, inadmissible at trial. Plaintiff and her counsel, for example, have claimed that Defendant Rose is the subject of an ongoing criminal investigation by the LAPD; this widely reported story is ultimately based on a letter from an LAPD detective to Plaintiff's counsel. Defendant and his counsel, similarly, have trumpeted information regarding Plaintiff's sexual behavior and history. Despite protestations by both sides, both sides continue to court the press regarding these and other issues.

## II.  DISCUSSION

The order requested by Defendant is a form of prior restraint: "[c]ourt orders aimed at preventing or forbidding speech 'are classic examples of prior restraints.'" *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 493 (5th Cir. 2013) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). "Prior restraints on speech are disfavored and carry a heavy presumption of invalidity." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 430 (9th Cir. 2014) (quoting *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009)). Due to the dangers they pose, prior restraints on speech are subject to strict scrutiny. *See Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1008 (9th Cir. 2003).

Nevertheless, in certain circumstances, the Court may issue a limited order restricting the speech of trial participants to protect the fairness of a judicial proceeding from media coverage. *See Levine*, 764 F.2d at 596. "The case for restraints on trial participants is especially strong with respect to attorneys" because they are officers of the court, with a fiduciary duty "not to engage in public debate that will . . . obstruct the fair administration of justice." *Id.* at 595 (quoting *Nebraska Press Association v. Stuart*, 427 U.S. 539, 601 n.27 (1976) (Brennan, J., concurring)). An order narrowly restricting the speech of attorneys and trial participants is more likely warranted in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV-15-07503-MWF-JCx | Date: September 30, 2016 |
| Title: Jane Doe v. Derrick Rose, et al. | |

highly publicized cases because "the circus-like environment that surrounds highly publicized trials threatens the integrity of the judicial system." *Id.* at 598. Indeed, the Supreme Court has suggested that a narrowly-drawn partial restraining order may be the preferred response when lawyers appear likely to divulge "inaccurate information, rumors, and accusations." *Sheppard v. Maxwell*, 384 U.S. 333, 1521 (1966). As Justice Oliver Wendell Holmes so elegantly stated in *Patterson v. Colorado*: "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." 205 U.S. 454, 462 (1907).

In *Levine*, the Ninth Circuit provided lower courts with guidance as to when a prior restraint on trial participants is appropriate. The Court may enter a so-called "gag order" against trial participants when "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available." *Id.* at 595 (internal citations omitted). Since *Levine* was decided, and in the wake of the Supreme Court's decision in *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1064 (1991), the Ninth Circuit has clarified that "clear and present danger" is not necessary to enter a gag order; rather, the somewhat lower showing of a substantial likelihood of material prejudice is all that is necessary. *See, e.g.*, *United States v. Wunsch*, 84 F.3d 1110, 1117 (9th Cir. 1996); *Berndt v. California Dep't of Corr.*, No. C03-3174 TEH, 2004 WL 1774227, at *3 (N.D. Cal. Aug. 9, 2004) ("After *Gentile*, the Ninth Circuit uses a less stringent test for a prior restraint if the prior restraint is being challenged by participants in the case." (quoting Erwin Chemerinsky, *Silence is Not Golden: Protecting Lawyer Speech under the First Amendment*, 47 EMORY L.J. 859, 880 (1998))).

Although *Levine* was a criminal case, authority in other circuits indicates that the same basic test applies whether the case is civil or criminal in nature. *See Marceaux*, 731 F.3d at 49; *Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 97 (3d Cir. 1988) ("The Supreme Court has recognized that conflict between freedom of speech and the right to a fair trial is no less troubling in the non-criminal context."); *but see CBS Inc. v.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-07503-MWF-JCx                    Date:  September 30, 2016
Title:     Jane Doe v. Derrick Rose, et al.

*Young*, 522 F.2d 234, 242 (6th Cir. 1975) (distinguishing the civil case at issue from "the murder conviction" of *Sheppard*).

### A. Substantial Likelihood of Material Prejudice

Courts look at a number of factors to determine whether a substantial likelihood of material prejudice exists. Perhaps the most important factor is the extent of pretrial publicity. Courts should ask whether pretrial publicity has become so extensive that potential or empaneled jurors will have difficulty avoiding press coverage of the trial. *See Levine*, 764 F.2d at 598 ("[I]t is apparent that this case has received widespread publicity."); *cf. Doe v. Hawaii*, No. CIV. 11-00550 DAE, 2011 WL 4954606, at *5 (D. Haw. Oct. 14, 2011) ("There is certainly no national media attention as yet on the instant case . . . [n]or has [the defendant] discussed trial strategy or the implications of this Court's rulings with the media . . . ."); *Kaur v. City of Lodi*, No. 2:14-CV-0828 GEB AC, 2014 WL 3956707, at *2 (E.D. Cal. Aug. 8, 2014). Courts also look to the nearness of trial. As the date set for trial begins to approach, "the potential for prejudice becomes particularly acute." *Levine*, 794 F.2d at 597.

Often, courts are motivated by a concern that the parties may attempt to introduce, improperly, evidence in the press that would be otherwise inadmissible in the courtroom at trial. *See Levine*, 764 F.2d at 597; *cf. Doe v. Hawaii*, No. CIV. 11-00550 DAE, 2011 WL 4954606, at *5 (concluding that a gag order was not justified where the defendant merely "reiterate[d] what is already a part of the public record as contained in the Complaint."). This factor increases in urgency as the date of trial draws near. Finally, as part of the foregoing analysis, courts should consider whether the parties' statements caused the publicity. *Id.* at 598.

The concerns outlined above are particularly acute in this case. The nature of Derrick Rose's celebrity is such that the trial would inevitably have gotten some attention. The parties' attempts to woo the press with salacious details and outlandish claims have only further fanned the flames. Moreover, the parties' attempts to litigate their respective cases with the press have increased as the trial date has drawn near. Now, on the eve of trial, outlets from gossip blogs to sports networks to the *Los*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.   CV-15-07503-MWF-JCx | Date:  September 30, 2016 |
| Title:   Jane Doe v. Derrick Rose, et al. | |

*Angeles Times* are covering the story. And, as was the case in *Levine*, the parties have already attempted to use the press as a way to air evidence that is either flatly inadmissible, or the admissibility of which is still in question.

The most recent and egregious example is the publicity given to a letter from an LAPD detective to Plaintiff's counsel, which would never be admissible at trial. Indeed, the letter could be viewed as violating the spirit and perhaps the letter of Rule 5-100(A) of California Rules of Professional Conduct, which forbids threatening criminal charges to gain advantage in a civil dispute, as well as Rule 5-120, which forbids prejudicial trial publicity. It is likely that this letter and other frantic comments of Plaintiff's counsel are aimed at attempting to influence settlement rather than intentionally tainting the jury pool. Unfortunately, that taint could be the result whether it is intentionally sought or not.

The Supreme Court has recognized that gag orders address "two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found." *Gentile*, 501 U.S. at 1075. Even if the Court were able to find a jury untainted by the heavy media coverage —likely with a jury pool drawn from four populous counties, but not a given — it will be increasingly difficult to ensure the jury remains unbiased once it is empaneled if the parties are permitted to continue their respective lobbying efforts. *See Levine*, 764 F.2d at 598. Here, much of the offending press has been published on blogs and news websites, in addition to more traditional media outlets. A scrupulous juror who has sought actively to avoid television and news media reports on the case may nevertheless be thwarted by a text alert or an unexpected Tweet. Accordingly, the Court concludes that there is a substantial likelihood of material prejudice if the parties and their attorneys are not restrained from further contact with the media.

Plaintiff contends that courts have denied parties' attempts to restrict media access in cases similar to this one, *i.e.*, cases where the defendant was independently famous and thus had greater access to the press than the plaintiff. (Opp. at 6 (citing *Constand v. Cosby*, 229 F.R.D. 472 (E.D. Penn. 2005), *amended in part* (June 24,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV-15-07503-MWF-JCx | Date:  September 30, 2016 |
| Title:     Jane Doe v. Derrick Rose, et al. | |

2005)).  In *Constand*, a woman sued a well-known celebrity for sexual assault.  Early in the litigation, the court denied the defendant's motion for a gag order limiting the parties from making extrajudicial statements about the case to the press.  *Id.* at 478.

Unlike this action, however, *Constand* was only in the discovery phase when the court denied the defendant's motion.  *Id.* at 475.  The court thus had no need, at that point in the litigation, to be concerned about prejudice once the jury was empaneled.  The *Constand* court also found that the parties' counsel had not made much of an attempt to lobby the press, reasoning that "although at least one counsel has made extrajudicial statements to the media concerning certain aspects of the case, the bulk of the media coverage has centered on the averments made by the parties in the pleadings." *Id.* at 475.   In this action, as discussed above, counsel for both parties have shared their litigation strategy with the press and attempted to introduce inadmissible, or at least questionably admissible, evidence through the press.

Finally, the court in *Constand* chose, as a less restrictive alternative, to adopt Rule 3.6 of the Pennsylvania Rules of Professional Conduct ("Pennsylvania RPC") as a case management order.  *Id.* at 477–78.  Pennsylvania RPC 3.6 tracks the Model Rules of Professional Conduct, which this Court relied upon in formulating the restraining order it ultimately adopts (see below).  Where *Constand* is not distinguishable from the situation at bar, it is in accord with the Court's approach.

At the hearing, counsel for Plaintiff pointed out that some of the attempts at publicity have been in court filings and not public statements.  The Court agrees, in part.  Should counsel for Plaintiff wish to challenge improperly filed pleading in the future, her team is not without recourse.  In response to a pleading that counsel believes to be improper, counsel may either file their own responsive pleadings, as appropriate, or appeal to the Court for assistance.

### B.     Less Restrictive Alternatives

The Court concludes that there are no less restrictive alternatives that would be effective in this case.  In *Levine*, the district court considered the following alternatives

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-07503-MWF-JCx         Date:  September 30, 2016
Title:    Jane Doe v. Derrick Rose, et al.

to entering a restraining order: (1) "searching" voir dire; (2) clear jury instructions; (3) a change of venue; and (4) sequestration. *Levine*, 764 F.2d at 599–600. Here, in light of Defendant Rose's national celebrity and the national news media coverage the case has already received, a change of venue would likely have no effect. And while the Court will conduct a searching voir dire, that process will not protect the jury from excessive media coverage once the trial begins. The parties' prior attempts to introduce inadmissible and prejudicial evidence via the press mean that the possibility that the jury will be tainted after empanelment weighs particularly heavily in this action.

Similarly, the Court is skeptical that clear jury instructions will be sufficient to counter any prejudice if the parties are able to introduce otherwise inadmissible evidence extrajudicially. Finally, as the court in *Levine* recognized, sequestration is a particularly dramatic remedy. *Id.* at 600. The court in that case was particularly loath to require jurors, "especially in long trials" to "bear the brunt of counsels' transgressions." *Id.* That reasoning applies with equal force here, where the trial is anticipated by both sides to last at least two weeks.

### C. Narrow Tailoring

Finally, the Court has endeavored to keep the partial restraining order as narrow as possible. The order draws on the model order outlined in *Levine*. *See Levine*, 764 F.2d at 599; *see also* Model Rules of Prof'l Conduct r. 3.6(a) (Am. Bar Ass'n 2014). In its final form, however, the order that will be implemented is even narrower than the order suggested in *Levine*. The attorneys will be permitted to speak to the press about public filings, to discuss courtroom events, and to preview the agenda for the next day. The order will prohibit the parties, their attorneys, and other members of the trial team from discussing only those topics that, based on the publicity already invited in this case, the Court has determined is particularly likely to be raised, and particularly likely to prejudice a jury.

Accordingly, the parties and their attorneys will be prohibited from discussing the character or reputation of the parties; the expected testimony of a party or witness;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV-15-07503-MWF-JCx | Date: September 30, 2016 |
| Title: Jane Doe v. Derrick Rose, et al. | |

the strengths or weaknesses of any party's case; evidence that has been ruled inadmissible, or that the attorneys reasonably should know is likely to be inadmissible, and which would create a substantial risk of prejudice if disclosed; and the true name of Plaintiff Jane Doe. To be clear, this is not a "no comment rule." *See Brown*, 218 F.3d at 429. The parties and their lawyers are free to speak generally with the press about the trial, so long as their comments do not implicate the character or reputation of the parties, reference evidence that has been ruled admissible, or likely would be ruled admissible if properly raised with the Court, and so on. *See id.* (finding order that was not a "no comment" policy to be sufficiently narrowly tailored).

Regarding the final restriction, it should be noted that the Court's purpose in denying Plaintiff the use of a pseudonym previously in this action was to ensure that all parties received a fair trial. (*See* Docket No. 264). Here, the restriction on the parties' and attorneys' use of Plaintiff's real name is intended to accomplish a similar goal. The press, online bloggers, and trial spectators may use Plaintiff's name or not, as they choose; the federal courts are not in the business of regulating the press. But the Court also perceives no legitimate reason for counsel or their clients to attempt to disseminate Plaintiff's name outside the courtroom. Recognizing that further dissemination of Plaintiff's name could prejudice her right to a fair trial, the Court finds it appropriate to include this restriction in the partial restraining order.

The Court emphasizes that the restraining order will apply only to attorneys, trial team members, and the parties; witnesses are not included in the order. *See McGregor*, 838 F. Supp. 2d at 1266 (calling the court's decision to apply a gag order only to attorneys and members of the trial team "a crucial distinction" and one of two reasons the order was sufficiently narrow). More important, and consistent with the First Amendment, members of the press are not subject to the partial restraining order. Accordingly, this order is not properly characterized as a prior restraint on the press. *See Radio & Television News Ass'n of S. Cal. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 781 F.2d 1443, 1446 (9th Cir. 1986). As in *Radio & Television News*, "the media [here] is free to attend all of the trial proceedings before the district court and to report

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-15-07503-MWF-JCx        Date: September 30, 2016
Title:     Jane Doe v. Derrick Rose, et al.

anything that happens. In fact, the press remains free to direct questions at trial counsel. Trial counsel simply may not be free to answer." *Id.* (citations omitted).

Unlike the press, the lawyers are already subject to Court supervision and ethical restraints in regard to this action and any lawsuit. The California Rules of Professional Conduct provide as follows:

> A member who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the member knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Cal. Rules of Prof'l. Conduct r. 5-120(A). Rule 3.6 (Trial Publicity) of the Model Rules of Professional Conduct is identical. In other words, the Court is ordering the lawyers to do what they already have an obligation to do. The congruence between the partial restraining order and counsel's ethical obligations illustrates how limited and appropriate this partial restraining order is.

The Court concludes that all three *Levine* factors are met in this case. A narrowly-tailored, partial restraining order is the most effective method for ensuring both parties are afforded a fair trial.

### III. CONCLUSION

For these reasons, the Court finds it appropriate to enter the following partial restraining order:

Plaintiff Jane Doe and her lawyers and trial team, and Defendants Derrick Rose, Randal Hampton, and Ryan Allen, and their lawyers and trial team, and anyone acting in concert with them who has actual knowledge of this Order, are hereby **ORDERED** not to make public statements relating to one or more of the following subjects:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV-15-07503-MWF-JCx | **Date:** September 30, 2016 |
| **Title:** Jane Doe v. Derrick Rose, et al. | |

    (1)    The character, credibility, or reputation of a party;

    (2)    The strengths or weaknesses of any party's case;

    (3)    Any information the attorneys know or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed; and

    (4)    The true name of Plaintiff Jane Doe.

IT IS SO ORDERED.